## CAHN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8380.

Circuit Court of Appeals, Ninth Circuit.

Nov. 3, 1937.

David Schwartz, of Los Angeles, Cal., for petitioner.

James W. Morris, Asst. U. S. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Asst. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals, which sustained the Commissioner's assessment of an income tax deficiency against the petitioner for the year 1924. .

The case was heard before the Board and before this court on an agreed statement of facts. The statement shows that taxpayer was a member of a Los Angeles jewelry partnership which, during the year 1924, sustained a loss from burglary in a sum in excess of $34,000. The firm carried burglary insurance with Lloyds of London, the policies having been issued by London brokers. Claim for loss was made against the insurers, but throughout the year 1924 and a part of 1925 the insurers denied liability on the grounds that the taxpayer's firm had violated the insurance contract. The position of the insurer is stated in the agreed statement of fact as: "7. Negotiations were conducted between the insurance companies and members of the partnership and their attorneys from the date of the theft until December 31st, 1924, at which time no settlement of the claim had been made. During all of the period of said negotiations the insurance companies denied any and all liability on the grounds that the theft if any, *was from the inside;* that the amount of loss sustained, if any, was not of the amount and value as claimed in the proof of loss filed; that on account of a breach in the contracts of insurance by the partnership, Robbins'; *in not keeping a watchman* on duty there was no liability on the part of said Lloyds of London; that at no time from the date of the theft on March 24th, 1924, and until July 20th, 1925, did said insurance company admit or concede that it was liable for the loss claimed by the partnership; that at no time prior to December 31st, 1924, or until July 20th, 1925, did said Lloyds of London or any of its agents pay or offer to pay any part of said loss; that the local insurance agents who solicited the insurance stated to the members of the partnership and their attorney that said Lloyds Insurance Company had no legally authorized agent within the State of California upon whom legal service of a complaint in a suit at law might be served, and the partners ascertained this to be a fact; that said local agents of said Lloyds of London, advised the taxpayer and his attorney that suit on the claim would have to be prosecuted in England, the home office of the insurance company; that a judgment obtained against said insurance company in California would be unenforceable because said company had no funds or other property within in the State which might be levied upon or attached to satisfy the judgment." (Italics supplied.)

In this situation, the partnership, which kept its books on an accrual basis, deducted the amount of the jewelry loss on its income tax return for 1924, under section 214(a) (5), chapter 234, Revenue Act of 1924, 43 Stat. 253, 269, 270, which provides:

"In computing net income there shall be allowed as deductions: * * *

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business."

In February, 1925, the taxpayer's firm commenced an action in the California superior court against Lloyds upon the insurance policies. Lloyds did not appear and submit to jurisdiction until April 6, 1925, when it contested the claim. Thus the appearance and contest of the claim came even after the taxpayer's return was made. In July, 1925, the suit was compromised and the insurers paid the firm $27,500 in full settlement. This amount less attorney's fees was included in gross income in the partnership return for 1925.

The Commissioner claims that so much of the burglary loss of 1924 as was recovered by the compromise and settlement with the insurers in 1925 could not properly be deducted as a loss under section 214 (a) (5) of the Revenue Act, supra, because it was a loss "compensated for by insurance." He does not assert that a compensation in 1925 would preclude a deduction of a loss in 1924; his position is that the loss was "compensated for" in 1924 by reason of the existence during that year of the claim against the insurance company.

We do not agree with the Commissioner and with the Board of Tax Appeals that the partnership loss was "compensated for" within the meaning of the statute before the end of the year 1924. The statu-

tory term must be given a practical construction. No practical business man would consider as "compensation," or as an asset subject to any rational valuation, an insurance claim which was contested by insurers on the ground that the loss was not covered by the policy because it was "a theft from the inside" and that there was a breach by failure to keep a watchman as required by the policy terms, and which had to be sued on in a foreign country with attendant increased expense. In estimating the value of a claim against a foreign insurer suable only abroad, a business man must rely on the advice of counsel. Here was a claim so uncertain' that the insured's attorney advised that the prospect of success upon it were not sufficient to justify pursuing it. If this is the sort of a claim upon which a loss is deemed "compensated for" within the meaning of the statute, then any sort of a possibility of future recovery, no matter how tenuous, no matter how distant in time the prospect might be, would become an asset, a "compensation" in the year the loss was suffered, by relation back from a future date when one, five, or ten years later the possibility eventually was realized. So to hold would violate the essential principles of bookkeeping and accounting and would require income tax returns to be made up on a basis divorced from the realities of everyday commercial experience.

No case precisely on the point in issue has been called to our attention. A similar situation, however, was presented in U. S. v. S. S. White Dental Co., 274 U.S. 398, 40ℤ, 47 S.Ct. 598, 71 L.Ed. 1120. In that case the taxpayer owned certain assets in a German corporation which' was taken over by the German government during the war. Taxpayer deducted the amount of this loss in 1918, the year in which the property was taken over. In 1922, what was left of the assets having been returned to the corporation, taxpayer realized the sum of $6,000 which it entered in its books as income for that year. In addition to this partial recovery of loss taxpayer had a claim for the remainder of the loss allowed by the Mixed Claims Commission. What would be realized upon this claim was uncertain. The Supreme Court overruled the Commissioner's contention that the loss should not be allowed as a deduction for 1918. The court said (at page 402 of 274 U.S., 47 S.Ct. 598, 600, 71 L.Ed. 1120):

"The quoted regulations consistently with the statute, contemplate that a loss may become complete enough for deduction without the taxpayer's establishing that there is no possibility of an eventual recoupment. It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The taxing act does not require the taxpayer to be an incorrigible optimist.

"We need not attempt to say what constitutes a closed transaction evidencing loss in other situations. It is enough to justify the deduction here that the transaction causing the loss was completed when the seizure was made. It was none the less a deductible loss then, although later the German government bound itself to repay and an award was made by the Mixed Claims Commission which may result in a recovery."

So, in the case at bar, it would "require a high degree of optimism" on the part of the taxpayer to discern in 1924 anything more than "a remote hope" that the insurers would ever permit a suit elsewhere than in Great Britain or repay the loss resulting from the burglary in that year.

"We need not attempt" to define the precise meaning of "compensated for by insurance or otherwise." "It is enough to justify the deduction here that the" burglary "causing the loss was completed" in 1924. "It was none the less a deductible loss then, although later the" insurer submitted to suit and eventually compensated the taxpayer for the greater part of the loss.

The Commissioner cites in support of his position Tax Board Recommendation, No. 55, Cum.Bull. 123: " * * * in those cases in which a loss occurs in one taxable year the taxpayer should compute his loss by deducting from the total loss the estimated amount of the recoverable insurance. The loss so determined should be deducted from the taxpayer's income of the year in which the loss was sustained. If subsequent events demonstrate that this estimate was substantially inaccurate, an amended return should be filed correcting the mistake."

■■ This recommendation is not a fully valid Treasury Regulation having the force of law. Ambassador Petroleum Co. v.

Commissioner (C.C.A.2) 81 F.(2d) 474, 481. If it were it could not be applicable where, as here, there was no rational basis in the year of loss upon which to estimate the amount of the recoverable insurance. This is not a case where the insured admits liability and the only question is adjustment of the amount of the loss. In such a case the insurer, with his peculiar knowledge of his loss, may make a rational estimate of the value of his policy as an asset, and hence as a compensation for his loss. The "estimate" "recommended" by the bulletin is something estimable, not an arbitrary figure or mere guess.

Reversed.