COASTAL TERMINALS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 55125.   Filed February 20, 1956.

*Jack White, Esq.*, for the petitioner.
*Raymond Whiteaker, Esq.*, for the respondent.

OPINION.

ATKINS, *Judge:* Section 23 (f) of the Internal Revenue Code of 1939 permits corporations to deduct from gross income the amount of "losses sustained during the taxable year and not compensated for

by insurance or otherwise." There is no dispute in this case as to the fact of either a loss having been sustained or as to the amount of it. The difference between the parties is only as to the year in which the deduction is allowable under the statute. The respondent has allowed it for the year in which the storage tank collapsed. The petitioner contends that in that year there were sufficient grounds for concluding that the amount of the loss would be recovered in full from the insurance company or the construction company, or both, wherefore the loss was "compensated for" in that year, and the deduction should be allowed in the following year when the loss to it was ascertainable.

The statute contemplates the deduction of losses which are fixed by some identifiable event. *United States* v. *White Dental Co.*, 274 U. S. 398. ".The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." *Lucas* v. *American Code Co.*, 280 U. S. 445. The standard for determining the year for deduction is a flexible, practical one, varying according to the circumstances of each case. *Boehm* v. *Commissioner*, 326 U. S. 287.

The petitioner cites several cases in which it has been held that loss deductions were properly allowable in the year in which settlement was effected with an insurer subsequent to the year of the occurrence of the event which gave rise to the loss. See *Allied Furriers Corporation*, 24 B. T. A. 457; *Commissioner* v. *Harwick*, 184 F. 2d 835; *Rose Licht*, 37 B. T. A. 1096. In the *Licht* case we stated in part:

We believe that the phrase "compensated for by insurance," as used in the statute, should be given "practical construction," but each case must be decided upon its separate facts. Where an insured person has a claim under insurance policies in force that is subject to reasonable prospects of success upon pursuing the claim, we believe it may be concluded that a loss is "compensated for" by insurance. However, in questions such as we have here, the burden of proof is upon the taxpayer, seeking a deduction for income tax purposes, to prove that his claim under insurance policies is substantial enough to be adjusted, in whole or in part, within a reasonable time. The rule, long established, is that deductions for losses must be taken in the year in which the loss is *sustained*. Were it not for coverage by insurance, a loss from a casualty would clearly be sustained in the year the casualty occurred. * * *

In each of these cases where the loss was allowed in the year of settlement, the petitioner had what appeared to be a tenable claim against his insurer warranting the belief that the claim was "compensated for" at the time of the occurrence of the event which gave rise to the loss.

The respondent, on the other hand, contends that the prospect of recovery from an insurer may be so uncertain as to require the conclusion that the loss was not "compensated for" and that the loss is deductible in the year of the occurrence of the event that gave rise to

the loss even though it may later develop that the taxpayer receives partial compensation, citing *Cahn* v. *Commissioner*, 92 F. 2d 674.

It is our view that the cited cases differ in a very material respect from the instant case and that none of them is directly in point. In each of the cited cases the taxpayer had a contract with an insurer which purported to afford coverage for the kind of loss that had been sustained. Here the petitioner's contract with the insurance company related to loss by windstorm. While one of the petitioner's witnesses testified that on the night of May 19, when the tank had been filled with water to a depth of 24 feet, "it was blowing and raining very hard" for a brief period, there is no evidence to show any connection between the elements on that day and the collapse of the tank on the following morning. In fact, prior to the end of the taxable year ended June 30, 1950, the petitioner had been advised by engineers whom it had retained that the collapse was due to the failure of the earthen foundation which had been constructed by the petitioner, and their report does not attribute the collapse as being in any degree due to wind or other weather conditions. While it is true that the petitioner, in the taxable year following the taxable year in which the collapse occurred, did file a claim with the insurance company, it is to be noted that in the claim there is no specific statement that the damage was caused by windstorm. The insurance company denied liability and paid no part of the claim, and the petitioner's attorney recommended against suing the insurance company. The reasons for denial of liability do not appear. In this connection it may be noted that even had the damage been caused by some peril covered by the insurance policy on the petitioner's property, there is considerable doubt whether this tank had become its property, and was covered by the policy, in view of the provision of the contract with the construction company that the title should remain in the construction company until payment was fully made. At the time of the collapse the petitioner had made only an initial payment. Under all the circumstances, we do not believe that it would have been reasonable to conclude, in the year of the collapse, that the loss was covered by the insurance policy.

Nor do we think that in that year it could reasonably have been concluded that the petitioner's loss would be compensated for by the construction company. The retained engineers had advised the petitioner that the steel and the welds were satisfactory and that the collapse was due to failure of the soil forming the earthen foundation constructed by the petitioner. Petitioner's contract with the construction company placed responsibility on the petitioner for any loss due to any fault in the foundation. Although the evidence shows that the contractor granted petitioner a credit in the following taxable year, the reason for such credit is not shown.

On brief, the petitioner's counsel calls attention to the testimony of an officer of the petitioner to the effect that he believed that the insurance policy covered tanks in process of construction, and that the petitioner was protected from loss either under the insurance policy or contractor's liability, or both. This belief, it is argued, supports the contention that in the year the collapse occurred there was a reasonable expectation of reimbursement. Such a subjective test is not decisive of the question of the year in which a loss is sustained. There must also be taken into consideration all the facts known or knowable on June 30, 1950, and the inferences reasonably to be drawn therefrom. *Boehm* v. *Commissioner, supra.*

Accordingly, applying the practical test called for by the decided cases, in the light of all the facts and circumstances in this case, we hold that the loss was not compensated for by insurance or otherwise in the taxable year ended June 30, 1950. Inasmuch as the loss was not compensated for, the amount thereof represents a loss sustained at that time, and the petitioner has not shown any reason for postponing the deduction to any later year.

The respondent did not err in denying the deduction on account of the loss for the fiscal year ended June 30, 1951.

*Decision will be entered for the respondent.*