LOUIS GALE AND NAOMI GALE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1777–62. Filed November 25, 1963.

*Melvin M. Engel*, for the petitioners.
*Marvin T. Scott*, for the respondent.

## OPINION

Drennen, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1959 in the amount of $8,000.65.

The only issue for decision is whether petitioners are entitled to a deduction for a fire loss in 1959 in the amount of $23,000.

All the facts were stipulated and are found accordingly.

Petitioners, husband and wife, resided in Houston, Tex., in 1959 and filed a joint Federal income tax return for that year with the district director of internal revenue at Austin, Tex.

On December 3, 1958, the dwelling house owned and occupied by petitioners at 4023 Grennoch Street, Houston, Tex., and certain personal property of petitioners contained therein were severely damaged and partially destroyed by fire.

Petitioners had in effect, at the time of the fire, a policy of insurance with National American Insurance Co. insuring the dwelling against risk of loss by fire, and a policy of insurance with the Niagara Fire Insurance Co. insuring certain personal property against risk of loss from fire.

On their 1958 joint income tax return petitioners claimed a casualty loss deduction as follows:

| | | |
|---|---|---|
| Damage to real property | | $8,000 |
| Damage to personal property | | 22,000 |
| Total | | 30,000 |
| Less: | | |
| Amount to be recovered from insurance on real property | $8,000 | |
| Maximum amount to be recovered from insurance on personal property | 15,000 | 23,000 |
| Net fire loss | | 7,000 |

Upon audit of this return an internal revenue agent determined that the loss on the personal property was only $17,000 instead of $22,000 as claimed on the return and, accepting petitioners' anticipated insurance recoveries, reduced the allowable loss to $2,000. Based on this adjustment, on May 26, 1960, petitioners executed a Form 870, Waiver of Restriction on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. Respondent took no further action with regard to the year 1958.

At some time during the year 1959, prior to May 28, 1959, both the Niagara Fire Insurance Co. and the National American Insur-

ance Co. denied any liability whatsoever under the above-mentioned fire insurance policies. As a result of the refusal of the insurance companies to pay the claims submitted to them by petitioners, on May 28, 1959, petitioners filed suit against such insurance companies in the District Court of Harris County, Tex., Eleventh Judicial District. These suits were not terminated until 1961, as hereinafter mentioned.

On their income tax return for 1959 petitioners claimed a casualty loss attributable to the fire in 1958 in the amount of $23,000, computed as follows:

Statement of casualty loss deductions:

On December 3, 1958, a fire partially destroyed our residence at 4023 Grennoch Street, Houston, Texas:

| | |
|---|---|
| Damage to real property according to appraisals and estimates immediately following fire loss | $8,000 |
| Damage to personal property according to proof of loss and inventory submitted to insurance company adjustors | 22,000 |
| Total estimated loss | 30,000 |

Adjustments:

| | |
|---|---|
| (a) Deduct amount of loss recovered by insurance on damage to real property at December 31, 1959 | 0 |
| (b) Deduct amount of loss recovered by insurance on damage to personal property at December 31, 1959 | 0 |
| (c) Deduct amount charged in 1040—1958 Tax Return, page 2 | $7,000 |
| Total adjustments | 7,000 |

Balance of fire loss to page 2, 1040—1959 ___ 23,000

Petitioners settled their suit against Niagara Fire Insurance Co. and a final judgment was entered therein on November 10, 1961. Petitioners' total recovery as a result of this settlement was $12,500.

After a trial by jury a final judgment was entered December 4, 1961, in the suit against National American Insurance Co. and recovery was had in the amount of $7,383.83.

On their separate income tax returns for 1961 petitioners restored $12,591.23 to income by reporting same. This amount represents the total recovery from the two insurance companies, less attorney's fees.

In the notice of deficiency herein, which applies only to the year 1959, respondent determined that petitioners' taxable income for 1959 should be increased by $23,000 as a result of the disallowance of the claimed casualty loss, with the explanation: "It is determined no loss could be ascertained until settlement of the litigation; therefore, the claimed casualty loss of $23,000 is restored to your taxable income."

Having only the year 1959 before us, the only issue for decision is

whether, under the facts and circumstances set out above and no more, petitioners are entitled to deduct the casualty loss in 1959.

Petitioners maintain that the claimed deduction is allowable as a casualty loss under section 165(a), I.R.C. 1954, which provides that "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Respondent contends that as of the end of 1959, there was a reasonable prospect for recovery of reimbursement from the insurers, and that therefore there was no "closed and completed transaction" until 1961 when petitioners' lawsuit with the insurance companies was completed.

At this juncture, it is noted, there is no disagreement about the maximum amount of insurance proceeds which might be expected to be recoverable as of the end of the year 1958, and there can be no question that the identifiable event which caused the *damage* occurred in 1958. And while there was some disagreement about the extent of the damage or loss with respect to the personal property as of the end of 1958, it was recognized by both parties that the maximum insurance recoverable would not fully reimburse petitioners for even the lower figure, and respondent recognized that the nonreimbursable part of the loss was deductible in 1958. The question is whether the balance of the *loss* was evidenced by a closed and completed transaction, or an identifiable event, in the year 1959 so as to have been "sustained" during 1959 within the meaning of the statute. *United States* v. *White Dental Co.*, 274 U.S. 398 (1927); *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930). This depends, in this case, on whether it could be determined in 1959 that the other requirement of the statute, that the loss was "not compensated for by insurance or otherwise," had been met. Compare *Rose Licht*, 37 B.T.A. 1096 (1938).

Both parties contend that their respective positions are authorized by the pertinent provisions of section 1.165–1, Income Tax Regs., which are set out in the margin.[1]

---

[1] Income Tax Regs.

Sec. 1.165–1  Losses.

(a) *Allowance of deduction.* Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction * * *

(b) *Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

\* \* \* \* \* \*

(d) *Year of deduction.* (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by

The rules set forth in the cited regulation are applicable by their terms only with respect to a casualty occurring after January 16, 1960, the day the regulation was promulgated; if the casualty occurred before that date, as it did in the instant case, the taxpayer has the option of treating the loss in "accordance with the rules then applicable, or, if he so desires, in accordance with" the rules of section 1.165–1(d)(2). Sec. 1.165–1(d)(4), Income Tax Regs. Petitioners have not specifically indicated which set of "rules" they prefer to rely on, but on brief they do rely on the regulation referred to above so we assume that is their preference. Under the circumstances here present we do not believe it would make any difference in the conclusion we reach.

The regulation interpreting section 165 of the 1954 Code was published January 16, 1960. T.D. 6445, 1960–1 C.B. 93. It appears that section 1.165–1(d)(2) was the result of Rev. Rul. 59–388, 1959–2 C.B. 76, in which it was announced that the Internal Revenue Service would follow the decision of the Court of Appeals for the Sixth Circuit in the case of *Scofield's Estate* v. *Commissioner*, 266 F. 2d 154 (1959), reversing on this issue 25 T.C. 774 (1956), and that steps would be

closed and completed transactions and as fixed by identifiable events occurring in such taxable year.

(2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. * * *

(ii) If in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other event occurs. For example, if property having an adjusted basis of $10,000 is completely destroyed by fire in 1961, and if the taxpayer's only claim for reimbursement consists of an insurance claim for $8,000 which is settled in 1962, the taxpayer sustains a loss of $2,000 in 1961. However, if the taxpayer's automobile is completely destroyed in 1961 as a result of the negligence of another person and there exists a reasonable prospect of recovery on a claim for the full value of the automobile against such person, the taxpayer does not sustain any loss until the taxable year in which the claim is adjudicated or otherwise settled. If the automobile had an adjusted basis of $5,000 and the taxpayer secures a judgment of $4,000 in 1962, $1,000 is deductible for the taxable year 1962. If in 1963 it becomes reasonably certain that only $3,500 can ever be collected on such judgment, $500 is deductible for the taxable year 1963.

(iii) If the taxpayer deducted a loss in accordance with the provisions of this paragraph and in a subsequent taxable year receives reimbursement for such loss, he does not recompute the tax for the taxable year in which the deduction was taken but includes the amount of such reimbursement in his gross income for the taxable year in which received, subject to the provisions of section 111, relating to recovery of amounts previously deducted.

\* \* \* \* \* \* \*

(4) The rules of this paragraph are applicable with respect to a casualty or other event which may result in a loss and which occurs after January 16, 1960. If the casualty or other event occurs on or before such date, a taxpayer may treat any loss resulting therefrom in accordance with the rules then applicable, or, if he so desires, in accordance with the provisions of this paragraph; * * *

taken to conform Treasury regulations to the *Scofield* decision. Prior to the issuance of T.D. 6445, *supra,* the regulations had provided simply that—

In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. * * * [Sec. 39.23(e)–1(b), Regs. 118.]

So far as we are advised, section 1.165–1(d)(2), Income Tax Regs., has not been judicially applied or approved.

The case of *Scofield's Estate* v. *Commissioner, supra,* involved a deduction for embezzlement losses of a trust when the defalcations had extended over a number of years, at least to 1932. In 1940, several years after the embezzlement had been discovered, a judgment was secured against individual trustees who had used trust funds for personal purposes. These defendants had contingent interests in the trust which would vest in 1942; they had no other property of substance from which the judgment could be satisfied. Litigation was pursued against a corporate trustee and against other defendants until 1948.[2] The individual trustees died before their interests in the trust were to vest in them. The taxpayer sought the loss deduction in 1948 when a judgment against the corporate defendant was affirmed on appeal. The Court of Appeals sustained the taxpayer's contentions, stating that the issue turned on whether, when the trustee began the litigation to recover the embezzled funds, "there was reasonable prospect of recovery of the assets of the trust wrongfully diverted, or whether such a prospect was only nebulous and problematical." If the facts showed that the prospects for recovery were indeed reasonable, then the taxpayer was justified in not claiming the loss deduction until the matter was settled in litigation.

The court stated further:

Normally where a taxpayer is in good faith willing to go to the trouble and expense of instituting suit to recoup a 23(e) type loss, there is as a matter of fact sufficient chance of at least part recovery to justify that taxpayer in deferring the claim of a loss deduction under Section 23(e) until the litigation in question is concluded. This is not to suggest that in some cases the facts and circumstances will not show such litigation to be specious, speculative, or wholly without merit and that the taxpayer hence was not reasonable in waiting to claim the loss as a deduction. However in the absence of such circumstances, a taxpayer who feels that chance of recovery is sufficiently probable to warrant bringing a suit and prosecuting it with reasonable diligence to a conclusion is normally reasonable in waiting until the termination thereof to claim a Section 23(e) deduction.

---

[2] Nominal amounts were recovered from some of these individuals after 1948.

It is of course noted that the Court of Appeals reversed a decision of this Court in reaching its decision in the *Scofield* case. But it was emphasized by the Court of Appeals that this Court had applied the same criterion for determining the year of deductibility as was applied by the reviewing court; differences arose merely from varying factual conclusions.

The provision of section 1.165–1(d)(2)(i) of the present regulations, in prescribing a test based upon the reasonableness of the prospect of recovery of reimbursement for the loss and in stating that whether or not prospects are, in fact, reasonable, depends upon the circumstances of each case, is in accord with the decision of the Court of Appeals in the *Scofield* case. It also appears to be in accord in principle with cases decided before the *Scofield* decision. The courts have long recognized that the loss from a casualty may be sustained in a year following the year when the casualty actually occurred, particularly where there is insurance involved, *Allied Furriers Corporation*, 24 B.T.A. 457 (1931) ; *Rose Licht, supra*. And in determining whether the loss was "compensated for by insurance" they have applied a test of the reasonableness of a taxpayer's prospects of recovery of insurance proceeds, to determine in some cases that the loss was deductible in the year the claim for compensation was settled, see *Allied Furriers Corporation, supra, Rose Licht, supra, Commissioner* v. *Harwick*, 184 F. 2d 835 (C.A. 5, 1950), affirming a Memorandum Opinion of this Court; and in other cases that the loss was deductible in the year the casualty occurred, see *Harry Brown*, 23 T.C. 156 (1954), *Coastal Terminals, Inc.*, 25 T.C. 1053 (1956), *Cahn* v. *Commissioner*, 92 F. 2d 674 (C.A. 9, 1937), reversing 33 B.T.A. 783 (1935). As stated by this Court in *Coastal Terminals, Inc., supra* at 1056 :

The statute contemplates the deduction of losses which are fixed by some identifiable event. *United States* v. *White Dental Co.*, 274 U.S. 398. "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." *Lucas* v. *American Code Co.*, 280 U.S. 445. The standard for determining the year for deduction is a flexible, practical one, varying according to the circumstances of each case. *Boehm* v. *Commissioner*, 326 U.S. 287.

Applying, then, the test laid down in section 1.165–1(d)(2)(i) of the present regulations to the facts and circumstances of this case, we must hold for the respondent. Petitioners' claim here is somewhat unusual in that they do not claim the loss in question was allowable either in the year in which the casualty occurred or in the year in which their insurance claims were settled or terminated, but rather in a year in which neither of those events occurred, i.e., the year in which the insurance companies denied liability, and petitioners rely on this factor alone for fixing the year in which their loss was deductible.

The fire occurred on December 3, 1958, and as of the end of the year 1958 petitioners had a reasonable expectation that the loss would be compensated for by insurance to the extent of $23,000 as evidenced by statements made in their 1958 return in support of their claim for a loss deduction of all amounts in excess of their maximum insurance coverage, and respondent's allowance thereof upon audit of that return.

But petitioners claim that when the insurance companies denied liability in 1959, that fact alone deprived them of any reasonable prospect of recovery, so the loss became deductible in 1959 even though they brought suits against the insurance companies for such recovery in that year. Denial of liability by an insurer is certainly a factor to be considered in deciding the reasonableness of the prospects of recovery, *Coastal Terminals, Inc., supra,* but it is only one factor. Such denial may be a formality; it may be specious; it may be merely the first step in a negotiated settlement; it may be only because of a disagreement as to amount; or it may be a delay to offer time for investigation.[3] But we cannot say that denial of liability alone, without more, is the decisive factor. Of equal or more persuasive force on this point, it seems to us, is the fact that petitioners, in good faith, brought suit against the insurers in 1959, see *Scofield's Estate* v. *Commissioner, supra,* and the fact, which we may consider, that they recovered.

The regulation upon which petitioners rely provides that where "there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained * * * until it can be ascertained with reasonable certainty whether or not such reimbursement will be received." Petitioners had a claim for reimbursement here which they originally thought was good and, from what we can determine from the record before us, they continued to think was good until they actually recovered thereon. Respondent has also determined that their claim gave them a reasonable prospect of recovery. The burden was on petitioners to show that their prospect for recovery was no longer reasonable as of the end of 1959. This they have failed to do. Nor could it be determined with reasonable certainty as of the end of 1959 whether or not such reimbursement would be received.

Petitioners argue that if respondent's interpretation of the Code is correct "the relief provisions of the Code designed to grant relief to those stricken by a casualty loss would lose much of their effect" because it takes so long to obtain a judgment in a suit against the insurer. Suffice it to say that the law allowing a deduction for losses has remained about the same for many years, and the courts have

---

[3] The record does not disclose why liability was denied in this case.

long interpreted it in accord with the principles laid down in this provision of the regulations. We think respondent has properly applied the regulation and those principles here.

This is not to say that under no circumstances would denial of liability by an insurance company become the identifiable event which would fix the time of the loss. But we need more facts and circumstances than we have been given here to find that it was such an event in this case.

*Decision will be entered for the respondent.*