Gus S. Caras and Rena C. Caras v. Commissioner.
Caras v. Commissioner
Docket No. 4448-62.
United States Tax Court
T.C. Memo 1964-187; 1964 Tax Ct. Memo LEXIS 152; 23 T.C.M. (CCH) 1103; T.C.M. (RIA) 64187; July 9, 1964
Gus S. Caras, pro se, 4000 Cathedral Ave., Washington, D.C. Francis O. McDermott for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' Federal income tax liability for the year 1960 in the amount of $128.59. This deficiency resulted from respondent's disallowance of $1,230.09 of a casualty loss deduction claimed by petitioners in the amount of $1,260.09. Petitioners allege that respondent erred in this determination and also pray in effect that the Court make a finding of an overpayment of taxes on account of a payment of $145.20 allegedly made by them "to stop the running of interest on an error," and ask for a refund in this amount, together with interest paid thereon in the sum of $4.59. Respondent by amended answer alleges that he erred in *153 allowing the sum of $30 as a casualty loss deduction for the year 1960 and accordingly claims an increased deficiency in the amount of $7.82. The issue presented by the pleadings is whether petitioners are entitled to deduct in the taxable year a casualty loss arising from an automobile accident and, if so, the amount thereof. Findings of Fact Petitioners are husband and wife residing in Washingon, D.C. They filed their joint income tax returns for the taxable year and all other pertinent periods with the director of internal revenue in Baltimore, Maryland. Gus S. Caras, the husband, will be sometimes hereinafter referred to as "petitioner." In February 1953 petitioners purchased a 1953 Chrysler convertible coupe which had a total list price of $4,107.65. Petitioners paid therefor $3,579 in cash and were granted a discount of $528.65. This car was maintained by petitioners in excellent condition. In November of 1958 petitioner, Gus S. Caras, talked to one of the officers of a garage and automobile sales company in Silver Spring, Maryland, with regard to the purchase of a new Chrysler automobile. When petitioner asked how much credit he would be given on the list price of the *154 new automobile by reason of a "trade-in" of his old automobile, the officer of the garage and automobile sales company, who was familiar with petitioner's old automobile and the care it had had, made an appraisal of it and told petitioner that it would have a "trade-in" value in such a transaction of $1,600. The amount of the "trade-in" value of an old car in such transactions is determined by the automobile dealer by a consideration of the estimated amount which the dealer would be able to realize from the sale of the old car on the open market over and above the cost of conditioning it for sale and the expenses incident to its sale, and also the amount of the discount below the list price of the new automobile which the dealer is willing to give the purchaser in order to make the sale. The amount of such discount usually depends on the list price of the new automobile to be sold, the percentage of such list price payable to the dealer as his commission on the sale, and the general selling conditions existing at the time of the proposed sale. Frequently the amount of this discount is such as to leave the dealer a net profit on the sale in the approximate amount of $200. The list *155 price of the new automobile which petitioner considered buying at the time his old automobile was appraised for "trade-in" purposes by the officer of the automobile sales company was approximately $4,200, and the percentage of the list price payable to the sales company as its commission was 24 percent. Petitioner did not buy the new car and accordingly did not "trade-in" his old car. Sometime later in 1958 he had the torque converter assembly of the old car overhauled and a new top installed at a total cost of $110.09. On February 9, 1959, this car, still owned by petitioners, was struck by another car driven by one Alberta Peaches Hurwitz and damaged to such an extent that it was impractical to repair it. The insurance company which insured petitioners' car against damage from collision offered petitioner the sum of $400 in satisfaction of its liability as the carrier of his collision insurance. This amount represented the value of his automobile ( $450) according to tables of values contained in a certain book commonly used by insurance companies and automobile dealers, which were purportedly based on average sales of automobiles in certain parts of the country less $50 deductible *156 under the insurance policy. Petitioner reluctantly accepted this offer but retained title to the automobile. On March 23, 1959, petitioner received the sum of $400 from his insurance company and on March 31, 1959, he formally released the insurance company of all liability under his policy. About a month after the accident petitioner authorized his garage to sell the damaged remains of his automobile as junk for $50. This sum was credited on the bill of his garage for storage in the total amount of $72. Subsequently, on April 30, 1959, his insurance company paid to petitioner the sum of $24 on account of his expenses for towing and storage incident to the collision. On October 18, 1960, petitioners filed a civil action against Alberta Peaches Hurwitz in the United States District Court for the District of Columbia for damages resulting from the accident of February 9, 1959. The complaint alleged that petitioner, Rena C. Caras, had been damaged in the sum of $40,000 on account of personal injuries. The allegations in the complaint concerning the damages of petitioner, Gus S. Caras, are as follows: The plaintiff, Gus S. Caras, is the husband of the said Rena C. Caras and as a result *157 of her injuries, as aforesaid, he lost and will lose her society and consortium, and has incurred and will incur medical expenses for her treatment, and her automobile which was involved in said collision was substantially damaged causing him expense to repair it, all to the damage of the plaintiff, Gus S. Caras, in the sum of Ten Thousand ($10,000) Dollars. In a pretrial statement filed in this action by petitioners' counsel and served on opposing counsel on July 24, 1962, petitioners listed as "SPECIAL DAMAGES" several items including "Automobile loss… $1,260.00." On January 29, 1963, this action was "Settled & Dismissed with Prejudice." [1]
The fair market value of petitioners' automobile immediately prior to the accident by which it was damaged on February 9, 1959, was $800. The fair market value of their automobile immediately after the accident was $50. Petitioner, Gus S. Caras, testified that petitioners took the casualty loss deduction *158 in their income tax return for 1960 rather than their return for 1959 because (1) in 1960 he read a passage in an unofficial publication of a tax service to the effect that the amount of a casualty loss may be ascertained by an appraisal of the property immediately before and immediately after the casualty, giving as an example a case in which an automobile damaged in an accident had been appraised for trade-in purposes for $1,360 and after the accident the car had been traded in on a new car at a trade-in value of $500, and (2) petitioners in 1960 had brought an action against Alberta Peaches Hurwitz for damages, which included damages to their automobile and "[he] anticipated that if [he] recovered on the car * * * [he] would apply that against the loss." Opinion KERN, Judge: In their Federal income tax return for the year 1960 petitioners deducted a casualty loss on account of damages to their automobile resulting from an accident which occurred in February 1959. Section 165 of the Internal Revenue Code of 1954 grants to individuals the right to deduct losses of nonbusiness property arising from "fire, storm, shipwreck, or other casualty" which are *159 "sustained during the taxable year and not compensated for by insurance or otherwise." As a general rule a casualty loss deduction must be taken for the year in which the casualty occurs and the damages are sustained. However, if the taxpayer proves that he has reasonable prospects of reimbursement under an insurance policy or recoupment from another person of such damages in whole or in part, he may postpone the taking of such deduction until a later year when events occur which put an end to any reasonable prospects of further reimbursement or recoupment. See Allied Furriers Corporation, 24 B.T.A. 457; Rose Licht, 37 B.T.A. 1096; Coastal Terminals, Inc., 25 T.C. 1053; Louis Gale, 41 T.C. 269; Commissioner v. Harwick, 184 F. 2d 835, affirming a Memorandum Opinion of this Court; Callan v. Westover, 116 F. Supp. 191, affd. per curiam 235 F. 2d 190. But cf. Commissioner v. Highway Trailer Co., 72 F. 2d 913, certiorari denied 293 U.S. 626, rehearing denied 294 U.S. 731, cited with approval in Harry Brown, 23 T.C. 156, 160, 161. In the instant *160 case the damages giving rise to the claimed deduction were sustained by petitioners in February 1959 and all claims against their insurance carrier were settled by the last of April of that year. There remained to them a right of action against the party allegedly responsible for the accident causing the damages (Alberta Peaches Hurwitz). Petitioners brought suit against Alberta Peaches Hurwitz in 1960. It is apparent from the record that petitioners had a reasonable expectation of recouping some or all of their damages from the defendant in this action. It is also apparent that by settling and dismissing this action with prejudice in 1963 any expectation of further recoupment from this source thereupon became nonexistent. It is not necessary for us to decide in this case whether petitioners should have taken the casualty loss deduction in 1959 or 1963; it is enough to conclude, as we do, that under no valid theory could petitioners take the casualty loss deduction in 1960, the taxable year before us. The fact that petitioner, Gus S. Caras, read something in a tax service in 1960 which caused him to believe that an appraisal of an automobile for "trade-in" purposes could establish *161 fair market value is wholly irrelevant and immaterial. Since we have concluded that petitioners are not entitled to deduct any casualty loss in the taxable year 1960, a discussion of the amount of petitioners' loss must be in the nature of obiter dictum. However, since this was in issue in this proceeding, since the greater part of the evidence adduced at the trial herein related to this question, and since we have made findings which determine this issue, we consider it advisable to comment briefly with regard thereto. Petitioner, Gus S. Caras, has contended that the fair market value of petitioners' automobile before the casualty was $1,600, the full amount of the "trade-in" value placed upon it by an officer of an automobile sales company in negotiations for the purchase of a new car pursuant to an appraisal of petitioners' automobile made by the office, [2] and that the fair market value of the automobile immediately after the casualty was $50, the amount for which it was sold on the open market after the accident. Petitioner argues that a passage in a tax service supports the view that the appraised value of an automobile for "trade-in" purposes is evidence of fair market *162 value. However, an example given in the tax service passage makes it clear that it was referring to a situation where there were appraisals of the "trade-in" value of the automobile both before and after the casualty. It is apparent from the evidence in this case that an appraisal of the "trade-in" value of an old car made by an automobile sales company in negotiations for the sale of a new car includes (1) an estimate of the fair market value of the old automobile and (2) the amount of discount from the list price of the new car which the sales company is willing to give to the prospective purchaser in order to make the sale. If, according to the example referred to, an automobile sales company appraises the "trade-in" value of an automobile at $1,360 before the casualty and at $500 after the casualty it may be assumed that the amount of the discount remains constant and the difference in the two amounts ( $860) represents the diminution in the estimated fair market value of the old automobile as a result of the casualty. The fallacy of petitioners' contention is their use of the appraisal of the "trade-in" value of their car (which includes the proposed discount) as evidence of the *163 fair market value of the car before the casualty and the actual price at which they sold their car on the open market after the accident (which did not include any proposed discount) as evidence of its fair market value after the casualty. Respondent, in determining the deficiency herein, appears to have relied solely on figures contained in a book frequently used by insurance companies and automobile sales agencies, which purport to be based on average sales prices reported in certain localities, as his basis for determining the fair market value of petitioners' car before the casualty. These figures are merely guides to an estimate of value and obviously cannot be considered as evidence of the fair market value of a particular car at a particular date. We have made our Findings as to fair market value of petitioners' automobile before the casualty upon a consideration of the testimony of petitioner, Gus S. Caras, *164 and an officer of the automobile sales company with regard to the condition of petitioners' car before the accident and to the amount of the appraisal of the "trade-in" value of the car made in November 1958, and upon a consideration of the testimony of two officers of the automobile sales company with regard to the amount of the "discount" contained in this appraisal. The fair market value of petitioners' automobile after the casualty obviously is the amount for which it was sold. Decision will be entered for the respondent. Footnotes
1. In his opening statement petitioner, Gus S. Caras, told the Court that this action was settled by the payment to the plaintiffs of $13,000. It was his impression that no part of this sum represented damages to petitioners' car.↩
2. In their return for the taxable year petitioners added to this amount the cost of repairs made subsequent to the appraisal and before the casualty in the amount of $110.09, showing the fair market value of the automobile before the casualty to be $1,710.09.↩