The Wellston Company, a Corporation v. Commissioner.
Wellston Co. v. Commissioner
Docket No. 3185-63.
United States Tax Court
T.C. Memo 1965-55; 1965 Tax Ct. Memo LEXIS 275; 24 T.C.M. (CCH) 306; T.C.M. (RIA) 65055; March 18, 1965
*275 The amount of the deduction to which the petitioner is entitled on account of the collapse of a portion of the roof of its building determined. James M. Roberts, 610 Fulton National Bank Bldg., Atlanta, Ga., for the petitioner. Thomas A. Brown, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1960 and 1961 in the respective amounts of $1,699.42 and $4,610.25. The principal issue for decision is whether the petitioner is entitled in 1961 to a deduction *276 in the amount of $97,484.15, claimed as a loss under section 165 of the Internal Revenue Code, on account of the collapse of a part of the roof of a building it owned. The taxable year 1960 is before us only because of the disallowance of a tentative loss carryback from the taxable year 1961. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioner was incorporated under the laws of the State of Georgia in 1956. Its principal place of business is in Atlanta, Georgia. It filed its income tax returns for the taxable years 1960 and 1961 with the district director of internal revenue at Atlanta. Petitioner owns a building at 1500 Southland Circle, Atlanta, Georgia, which it leases to an Atlanta wholesale liquor distributing company, which uses the building as an office-warehouse. This building was constructed in 1957 at a cost of $322,719. By the end of the taxable year 1960, petitioner had claimed depreciation on the building, for income tax purposes, in the amount of $51,570.95. The building is basically rectangular, approximately 360 feet in length and 181 feet in width. The walls are constructed *277 of 8 inch jumbo brick with reinforced brick pilasters spaced about 15 feet apart. The roof of the building, as originally constructed, was of unusual design, [1] being a concrete slab, with no expansion joints, supported by the petimeter walls and interior steel columns. The interior steel columns are in a line throughout the building approximately 20 feet part. The over-all area of the building's roof is approximately 80,000 square feet. The construction company that built the building guaranteed it for one year from October 22, 1957. This guarantee provided as follows: This is to guarantee for a period of one year from this date all work executed under the plans and specifications for the construction of the Office and Warehouse, 1500 Circle, N. W., Atlanta, Georgia, to be free from defects of materials and workmanship as performed by his employees and such subcontractors employed by him. All defects occuring within *278 this period shall be replaced by Contractor at no cost to the Owner. Nothing in the above intends or implies that this guarantee shall apply to work which has been abused or neglected by the Owner or his assignees. On February 20, 1961, a portion of the roof near the southwest corner collapsed. The collapsed portion encompassed approximately 3,000 square feet of roof and approximately three bays (a bay being the area between 2 columns). In addition, when the roof collapsed, the south wall of the building buckled and a railroad unloading dock canopy was damaged. The night prior to the collapse three inches of rain fell and there had been very high winds. Sometime in 1961 the petitioner engaged engineers to determine the cause of the collapse of the roof, with a view to obtaining evidence for use in any subsequent legal action against the architect who drew the plans for the warehouse, the contractor who built the warehouse, and the patentee of the design from which the roof was constructed. The collapse of the roof was due to faulty design and to negligent construction which did not meet the specifications of the contract, or requirements of the building code of the city of *279 Atlanta, Georgia. After the collapse petitioner employed a construction company to perform certain work on the building. This work consisted principally of reinforcing the entire roof structure by the use of horizontal steel members placed immediately underneath the roof. The south wall was jacked back into position and the railroad unloading dock canopy was replaced in its entirety. Two pilasters which were damaged were strengthened by the installation of steel columns to act as stiffeners. The portion of the roof that collapsed was cleared away, and any jagged edges were cut to neat lines. Approximately 10.08 percent of the entire roof area was replaced with a lightweight concrete roof deck placed on corruform, a lightweight steel panel. Tar and gravel were used as a cover over the replaced portion of the roof. The total amount expended by petitioner for the foregoing work was $154,683.93, of which $97,484.15 was expended in 1961. Petitioner was covered by insurance for rain and wind damage. However, it did not receive any reimbursement under its policy since it could not show that the roof collapse was due to rain or wind. The petitioner did not have a contract with the architect. *280 The president of petitioner, James M. Roberts, had a conference with the construction company which had constructed the building. That company denied any liability and thereafter refused to confer with Roberts. Roberts considered the possibility of bringing suit against the construction company and with that in mind made an exhaustive search to determine whether the construction company had assets out of which any judgment might be collected. He was unable to find any assets owned by the construction company except some office furniture and fixtures. Roberts, who is a practicing attorney in the State of Georgia, was of the opinion in 1961 that there was no reasonable expectation that the petitioner would recover its loss from the construction company, since he had found no grounds under the law of Georgia for asserting liability against the construction company, and because it was his belief even if a judgment were obtained there would be no assets out of which to collect it. No suit has ever been brought by the petitioner against the construction company. Nor has the petitioner brought suit against either the architect or the patentee of the roof design. The total cost of the structural *281 steel work was approximately $115,000. The use of structural steel to reinforce the roof improved the structural strength of the building, improved its original design, and added to the value of the building. Of the total amount of $154,683.93 expended, approximately $16,000 represented the cost of jacking up the damaged wall and the cost (aside from the structural steel work) of replacing the portion of the roof which had collapsed. In its income tax return for the taxable year 1961 the petitioner claimed a casualty loss in the amount of $97,484.15 due to "roof collapsed during rainstorm". The respondent disallowed the amount claimed with the explanation that "you have not established that you are entitled to such deduction in the taxable year 1961". The petitioner suffered a loss in 1961 due to the collapse of the roof for which there was no reasonable prospect of recovery by insurance or otherwise. Opinion The respondent's first contention in support of his disallowance of the deduction claimed by the petitioner for 1961, on account of the collapse of a part of the roof of its building, is that the loss was "compensated for by insurance or otherwise", within the meaning *282 of section 165(a) of the Internal Revenue Code of 1954, [2] inasmuch as, he claims, in 1961 there was a reasonable prospect of recovery of at least a substantial part of the claimed loss. [3] He does not suggest that the claimed loss was compensated for under the petitioner's insurance policy covering rain and wind damage - indeed, the parties have stipulated that the cause of the roof collapse was faulty design and negligent construction. He does contend, however, that there was a reasonable prospect of recovery from the contractor, since, as determined by the engineers engaged by the petitioner, the damage was caused by faulty design and negligent construction. *283 On brief the parties argue with respect to whether the petitioner intended to file a suit against the construction company and whether the petitioner's president, James M. Roberts, anticipated any recovery. In this connection there is much argument concerning what Roberts told the revenue agent in 1962 and 1963 with respect to possible recovery by suit. A part of the argument by the parties on brief with respect to the possibility of recovery deals with the question of whether the express guarantee of the work given by the contractor for one year negatives any implied warranty which would cover a claim for recovery of damages sustained after the expiration of one year from the date of construction in 1957. We find it unnecessary to determine whether the petitioner would have had a cause of action against the construction company. Roberts, who is an attorney, testified that he was never able to find any legal grounds for bringing suit against the construction company, although he had hoped that he would find such grounds. The fact is that no suit has ever been filed by the petitioner against either the contractor, or anyone else. Furthermore, Roberts testified that an exhaustive *284 search was made to determine whether the construction company had assets, that the only assets located consisted of certain office furniture and fixtures, and that, therefore, even if a judgment could have been obtained it probably would have been uncollectible. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. Lucas v. American Code Co., 280 U.S. 445. The standard for determining the year for deduction is a flexible, practical one, varying according to the circumstances of each case. Boehm v. Commissioner, 326 U.S. 287. And, as we pointed out in Coastal Terminals, Inc., 25 T.C. 1053, the question of whether there was a reasonable expectation of reimbursement in the taxable year is not to be decided by any subjective test, but must be decided upon the basis of all the facts known or knowable in the taxable year and the inferences reasonably to be drawn therefrom. Boehm v. Commissioner, supra.The taxing act does not require the taxpayer to be "an incorrigible optimist". United States v. S. S. White Dental Mfg. Co., 274 U.S. 398. Upon *285 the record here we are satisfied that there was not in 1961 any reasonable prospect of recovery from the construction company. Nor, since there was no contract between the petitioner and the architect, and apparently none between the petitioner and the patentee of the roof design, do we consider that there was any reasonable prospect of recovery from either of those parties. Accordingly, it is our conclusion that any loss sustained upon the collapse of the roof in 1961 should not be considered as compensated for by insurance or otherwise, within the meaning of section 165(a) of the Code, and that petitioner is entitled to deduct any such loss in that year. The respondent concedes that if we should hold that the petitioner did sustain a loss in 1961 by reason of the fact that the petitioner did not have a reasonable prospect of recovery, the amount of the deductible loss should be measured by the portion of the total expenditure which was necessary to restore the roof to its condition prior to the collapse, namely, $16,000. It is respondent's position that the remainder of the amount expended constituted costs of improving the building beyond its condition prior to the collapse, and *286 is hence not a proper measure of the loss sustained. The petitioner claimed a deduction of the full amount expended in 1961, namely, $97,484.15. On brief it states that as a result of the collapse the whole roof was affected and that the entire amount expended should be considered as a measure of the loss. [4] Alternatively, the petitioner contends that the measure of the loss should be $29,000, consisting of the amount of $16,000 above mentioned, plus $13,000 which the respondent's expert witness, John W. Hambrick, testified represented the portion of the over-all cost of the structural steel work which is properly allocable to the section of the roof which collapsed. We agree with the respondent that the petitioner has not shown that it is entitled to a deduction *287 in a greater amount than $16,000. All the rest of the expenditures, including the $13,000, served to improve the building beyond its condition immediately prior to the collapse of a portion of the roof, and hence are not a proper measure of the loss sustained. Upon a recomputation under Rule 50 a deduction of $16,000 will be allowed. The amount of any net loss for 1961 which may result from our holding herein (which may be carried back and deducted from 1960) will be determined in connection with the recomputation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. The designer attempted to realize a wide spacing of columns and still maintain a minimum slab thickness by introducing a system of tension members strung between the column heads and held away from the slab by vertical struts, forming a truss-type structure.↩
2. Section 165(a) provides as follows: General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. ↩
3. Section 1.165-1(d)(2)(1) of the Income Tax Regulations provides as follows: If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165↩, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.
4. It should be stated that the petitioner apparently does not base its claim for a deduction upon section 162 of the Internal Revenue Code of 1954, dealing with ordinary and necessary business expenses. Indeed, both parties speak in terms of a loss deduction under section 165↩ of the Code and appear to refer to the actual expenditures merely for the purpose of measuring the amount of the loss.