T.C. Summary Opinion 2001-115


UNITED STATES TAX COURT


TOMMY LEE RANDLE AND JOYCE FAYE RANDLE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10014-00S.                Filed July 31, 2001.


Tommy Lee Randle, pro se.

Igor S. Drabkin, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1996, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1996 in the amount of $2,437.

After concessions,[2] the issues for decision are as follows:

(1) Whether a casualty loss arising from the Northridge earthquake in 1994 was "sustained" in 1996 (the taxable year in issue) or in some prior year.  We hold that the casualty loss was not sustained in 1996 but in a prior year.

(2) Whether the amount of the loss deductible under section 165 has been shown to be the amount claimed by petitioners on their 1996 return.  We need not reach this issue because of our holding in respect of the prior issue.

Background

Some of the facts have been stipulated, and they are so found.  Petitioners resided in San Dimas, California, at the time that their petition was filed with the Court.

---

[2] Petitioners concede that they failed to report a part ($5,199) of a distribution ($16,014) from petitioner Tommy Lee Randle's individual retirement account, all of which is taxable. Petitioners also concede that the distribution is subject to the 10-percent additional tax under sec. 72(t) on early distributions from qualified retirement plans.
     The parties agree that the adjustment made to the deduction claimed by petitioners for medical expenses on Schedule A, Itemized Deductions, is a computational matter.
     Finally, the parties agree that the deficiency determined by respondent in the notice of deficiency does not take into account a payment made by petitioners in the amount of $1,601.  We expect this payment to be reflected in the decision to be entered in this case.

Since March 1980, petitioners have owned and lived in a single-family residence located in San Dimas, California.  On January 17, 1994, petitioners' residence was damaged by the infamous Northridge earthquake.  Although petitioners maintained homeowners' insurance at the time, their policy did not cover damage caused by earthquake.

After the earthquake had occurred, petitioners sought financial assistance from the Federal Emergency Management Agency (FEMA).  Toward that end, petitioners filed an application (No. 62245) for Disaster Housing Assistance.  By letter dated August 26, 1994, FEMA advised petitioners, in part, as follows:

> This is in response to your application for Disaster Housing Assistance.  You are eligible for financial assistance to make essential home repairs because your primary residence sustained damage as a result of the disaster.
>
> [FEMA] is issuing you a check for $2,641.96 to cover the cost of making essential repairs to your home. * * *  It is important you understand that the law will not allow us to pay for all the repairs your home needs, but only those that are necessary to make it safe to live in.
>
> *    *    *    *    *    *    *
>
> If you disagree with FEMA's decision, you may appeal it.  Your appeal must be in writing * * * .  Your appeal letter must be postmarked no later than the 60th day after the date of this letter. * * * FEMA will respond in writing to your appeal no later than 15 calendar days after we receive it.

Although the record is not definitive on the matter, it would appear that petitioners did not appeal FEMA's August 26, 1994, decision.

Petitioners filed a second application (No. 5341A) with FEMA on January 11, 1995, indicating a date of loss of January 6.[3] Boxes 8 and 10 of the application indicate that the damage in question was caused by flooding, rather than by earthquake. FEMA responded to this application on April 4, 1995, apparently awarding $300 for damage to "foundation and masonry".

Petitioners appealed FEMA's April 4, 1995, decision. By letter dated April 20, 1995, FEMA advised petitioners, in part, as follows regarding Application No. 5341A:

> This is in response to your letter of appeal regarding your assistance from FEMA. We have reviewed your case again and determined that the original decision was correct because:
>
> ___X___ FEMA's Home Repair Program (HRP) covers only those damages caused directly by disaster. **ALL ELIGIBLE** items have been addressed in your initial award. [Emphasis in the original.]
>
>      *   *   *   *   *   *   *
>
> This determination is final regarding assistance from the FEMA Disaster Housing Program. * * *

Petitioners filed a disaster loan application with the U.S. Small Business Administration (SBA) on a date not disclosed in the record. By letter dated March 28, 1995, SBA advised petitioners, in part, as follows:

---

[3] The application does not specify the year of the loss; however, based on the application as a whole, 1995 would appear to be the year of the loss.

We have given careful consideration to your disaster loan application filed with this Agency. Unfortunately, we were unable to approve the loan application because of an apparent lack of reasonable assurance of your ability to repay the proposed SBA loan and other obligations from earnings.  We have concluded that you cannot support any further debt obligations at this time, based upon a thorough review of your total monthly income and expenses as indicated in your loan application.

If you disagree with this determination, you have the right to request a reconsideration.  However, such a request must comply with the following requirements:

* * * * * * *

b. It must be received by this office no later than six months from the date of this letter.

* * * * * * *

We regret our inability to be of assistance to you.

There is nothing in the record to suggest that petitioners ever requested SBA to reconsider its denial of petitioners' disaster loan application.

Petitioners filed one or more applications for disaster assistance with the Individual and Family Grant Program of the Department of Social Services of the State of California (California State Department of Social Services) on a date(s) not disclosed in the record.  Petitioners' application(s) covered both transportation needs and personal property.  By letter dated June 15, 1995, the California State Department of Social Services replied to petitioners' application(s).  This letter, which referenced both the disaster relief file number assigned by the

State and petitioners' FEMA Application No. 5341A (regarding the January 1995 flood), advised petitioners, in part, as follows:

> We have reviewed your application for disaster assistance from the Individual and Family Grant Program and any verification you may have provided.
>
> We regret to inform you that we have determined that you do not qualify for assistance for transportation damages or losses because you have sufficient remaining vehicles to meet your serious needs.
>
> We are sorry that you do not meet our program guidelines.  * * *

Attached to the foregoing letter was an Appeals Process Notice (the Notice) indicating that the California State Department of Social Services had denied petitioners' disaster assistance application for personal property on May 13, 1995, and petitioners' disaster assistance application for transportation on June 15, 1995.  The Notice also advised petitioners that if they disagreed with either determination, they could file a written appeal with the State within 60 days from the date of the Notice.

There is nothing in the record to suggest that petitioners ever filed an appeal in respect of the denial of their disaster assistance application(s) by the California State Department of Social Services.

Late in 1995, having met with only limited success in obtaining disaster relief from State and Federal agencies and apparently having limited credit, petitioners turned to their

relatives for financial assistance.  The following Spring, in April or May, repairs to their residence began, which repairs were completed in August or September 1996.

Petitioners filed a U.S. Individual Income Tax Return, Form 1040, for 1996.  Petitioners attached to their return Schedule A, Itemized Deductions, and claimed thereon a casualty loss in the amount of $7,194.  In support of this loss, petitioners also attached to their return Form 4684, Casualties and Thefts.  The form suggests that petitioners used the cost of repairs as the measure of their loss.

Discussion

As a general rule, section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.  In the case of an individual, section 165(c) limits the deduction to:  (1) Losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, even though not connected with a trade or business; and (3) losses of property not connected with a trade or business or with a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

Issue (1): Year in Which the Loss Was Sustained

Respondent properly concedes that the loss incurred by petitioners from the Northridge earthquake arose from a casualty

within the meaning of section 165(c)(3).  However, respondent contends that such loss was not "sustained" by petitioners in 1996 but rather in 1994 or, at the latest, in 1995.  In contrast, petitioners contend that they sustained the loss in 1996 because that was the year in which they "paid for the damage" by having their home repaired.  We agree with respondent.

A casualty loss, like any loss that is deductible under section 165, is allowable only for the year in which the loss is "sustained".  Sec. 1.165-1(d)(1), Income Tax Regs.  A loss is sustained during the year in which the loss occurs as evidenced by closed and completed transactions and fixed by identifiable events.  Id.; see Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975); Gale v. Commissioner, 41 T.C. 269, 272 (1963); Allied Furriers Corp. v. Commissioner, 24 B.T.A. 457, 458 (1931); sec. 1.165-1(b), Income Tax Regs.  In this regard, section 1.165-1(d)(2)(i), Income Tax Regs., provides as follows:

> If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. * * *

A reasonable prospect of recovery exists when the taxpayer has a bona fide claim for reimbursement from a third party and

when there is a substantial possibility that such claim will be resolved in the taxpayer's favor.  See Ramsay Scarlett & Co. v. Commissioner, supra at 811.  The issue is one of fact, to be decided on the basis of all of the facts and circumstances.  See Boehm v. Commissioner, 326 U.S. 287, 292-293 (1945); Dawn v. Commissioner, 675 F.2d 1077, 1078 (9th Cir. 1982), affg. T.C. Memo. 1979-479; sec. 1.165-1(d)(2)(i), Income Tax Regs.

Petitioners' residence was damaged by the Northridge earthquake on January 17, 1994.  Thereafter, petitioners filed an application for Disaster Housing Assistance with FEMA and obtained financial assistance no later than August 1994. Although the check that petitioners received may have been for less than they would have wished, the record suggests that petitioners did not appeal FEMA's August 26, 1994, decision.

Although petitioners filed a second application with FEMA in January 1995, this application was for damage caused by flooding rather than by earthquake.  In any event, FEMA responded to this application on April 4, 1995, and denied petitioners' appeal later that month.

Finally, petitioners sought disaster relief from both SBA and the California State Department of Social Services.  However, the record is not clear whether the relief sought was in respect of damage caused by the Northridge earthquake.  In any event, both SBA and the California State Department of Social Services

denied petitioners' applications in March 1995 and June 1995, respectively, and there is nothing in the record to suggest that petitioners appealed the denial of either application.

In view of the foregoing, it is apparent that after June 1995 at the latest, petitioners had no reasonable prospect of recovery with respect to any claim for reimbursement for damage to their residence caused by the Northridge earthquake. Accordingly, the casualty loss was not sustained in 1996 but rather in 1994, the year in which the Northridge earthquake occurred or, at the latest, in 1995, the year in which claims for reimbursement possibly relating to damage caused by such earthquake were finally resolved.

Petitioners contend that they sustained the loss in 1996 because that was the year in which they "paid for the damage" by having their home repaired. However, petitioners' contention does not reflect the applicable law, which we discussed above and which we are obliged to apply.

Issue (2): Amount of the Loss

In view of our disposition of the prior issue, the issue regarding the amount of petitioners' deductible loss is moot.

Conclusion

In view of the foregoing, respondent's determination is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

In order to give effect to our disposition of the disputed issue, as well as petitioners' concessions,

<u>Decision will be entered</u>

<u>pursuant to Rule 155</u>.[4]

---

[4] See <u>supra</u> note 2.