HENRY S. CAHN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MAURIE S. ROBBIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43088, 43113. Promulgated December 27, 1935.

*Lloyd Anderson, Esq.,* and *T. H. Poole, C. P. A.,* for the petitioners.

*James H. Yeatman, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax against the petitioners as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Henry S. Cahn | 43088 | 1924 | $1,755.77 |
| Do | 43088 | 1926 | 55.37 |
| Maurie S. Robbin | 43113 | 1924 | 638.68 |

The only question before us for decision in these proceedings is the correctness of the action by the respondent in his disallowance of $27,500 of a claimed deduction from gross income of the partnership Robbin's for the calendar year 1924, of which the petitioners were equal partners, representing the loss of the partnership from the theft from the partnership of merchandise costing $34,303.61. The partnership claims the deduction either as a bad debt ascertained to be worthless and charged off within the year 1924, or as a loss.

These proceedings have been submitted to the Board on a stipulation of facts signed by both parties.

The petitioners are residents of Los Angeles, California. Throughout the years 1924, 1925, and 1926 they were engaged in business under the firm name and style of Robbin's. The partnership operated a retail jewelry and clothing business in Los Angeles. Each of the petitioners owned a one-half interest in the business.

In March 1924 the store of the partnership was burglarized and merchandise costing $34,303.61 was stolen. The partnership was insured against theft by two policies in Lloyds of London, England, in the amount of $50,000. The policies were issued by the Threadneedle Insurance Co., and Crowley et al., insurance brokers of London, England. The policies were sold to the partnership by Rule & Sons, insurance agents of Los Angeles. During the years 1924, 1925, and 1926 neither Lloyds of London, the Threadneedle Insurance Co., nor Crowley et al., were licensed to transact insurance business in California and neither of the companies above referred to had authorized the Insurance Commissioner of the State of California or any other person to accept service of process in such state, nor had any of them made any deposit of securities with the Insurance Commissioner or the Treasurer of the State of California as a guaranty that losses sustained under the policies of insurance written by them in the State of California would be paid.

After the burglary the partnership made claim under their policies against the insurers for the recoupment of the loss of $34,303.61. The insurers denied liability. The petitioners consulted their attorney, who, after investigation, found that suit could not be brought

against the insurers in the State of California unless service would be accepted by a representative of the insurers in California, and that the institution of a legal proceeding against the insurers in England would be exceedingly expensive and probably not result in any recovery. Upon the receipt of this information in the latter part of 1924, the partnership, as of December 31, 1924, charged off on its books of account, which were kept on the accrual basis, the total amount of the loss and in the partnership return filed for 1924 claimed the $34,303.61 as a deduction from gross income.

On February 17, 1925, the petitioners brought suit against the insurers in the Superior Court of the State of California in and for the County of Los Angeles for the recovery of $35,000 under the insurance policies. Service of process in this suit was voluntarily accepted by counsel for the insurers and an answer to the bill of complaint therein was duly filed. In the answer the insurers denied liability on various grounds and claimed that the policies were not binding on them as members of the partnership had breached the terms of the contract and had misstated the facts in their application for the insurance. After the filing of the answer by the insurance company, negotiations for settlement were entered into by the attorneys for the parties and in August 1925 a compromise was agreed to under which the partnership received the sum of $27,500 in full settlement of the claims under the insurance policies, and the suit was dismissed.

Since the partnership had charged off on its books of account in 1924 the cost of the merchandise stolen, it took up as income on its books of account in 1925 the amount received in compromise of the suits less $2,500 paid to attorneys, or a net amount of $25,000, which was reported as income by the partnership for the year 1925, but this was offset by losses of that year, with the result that no tax was paid thereon.

Upon investigation of the partnership returns for the years 1924 and 1925 the respondent held that the loss by theft in 1924 should have been reduced by the amount recovered from the insurers and that the amount of the loss deductible from the gross income of 1924 was $6,803.61 ($34,303.61 minus $27,500), this being the difference between the cost of the property stolen and the gross amount of money received under the terms of the compromise settlement.

The pertinent statutory provisions are sections 214 (a) (4) and (7) of the Revenue Acts of 1924 and 1926, which read:

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

\*      \*      \*      \*      \*      \*      \*

(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a

reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

We are of the opinion that there is no merit in the contention of the petitioners that the partnership is entitled to deduct from the gross income of 1924 as a bad debt any portion of the claimed loss of $34,303.61. The unliquidated claim which the partnership had against the insurers was not a debt within the ordinary meaning of that term. No debtor and creditor relationship existed between the partnership and the insurers. See *Peterson Linotyping Co.*, 10 B. T. A. 542, and cases cited therein in which debts are distinguished from losses. In *First National Bank of Sharon* v. *Heiner* (C. C. A., 3d Cir.), 66 Fed. (2d) 925, it was held:

In providing for deductions from income tax, Congress made a distinction between losses and debts. Recognizing that a loss was a thing of the present, as, for example, theft, fire, or embezzlement and the like, Congress provided a deduction of such item in the current tax year. Recognizing likewise that debt was a thing of the future, namely, a contract obligation to be later fulfilled, Congress provided that a future reduction was to be allowed if and when the obligation proved worthless and was charged off. In common speech, debt was regarded as created by contract between a debtor and a creditor, or, as expressed by Blackstone, a sum of money due by certain and express agreement.

Conceding, however, for the sake of argument, that the amount claimed by the partnership from the insurers constituted a debt which was charged off the partnership books of account at the end of 1924, it would not be an allowable deduction from the gross income of 1924 for the reason that there is no satisfactory showing that the claimed debt became worthless or was uncollectible in 1924. Clearly, the partnership did not abandon hope of collecting on its insurance policies and in 1925 began legal proceedings against the insurers in compromise of which it recovered $27,500 in 1925.

We think it clear that if the partnership were in no wise protected in 1924 against losses by burglary it would be entitled to deduct from its gross income of 1924 the full amount of $34,303.61, the cost of the merchandise stolen. But the partnership was protected by two insurance policies against such loss. We do not understand that the words " not compensated for by insurance or otherwise " contained in section 214 (a) (4) have reference to the time that the compensation is paid. We think it plain that to the extent a taxpayer's loss from fire, burglary, or other casualty is covered in whole or in part by insurance he has not sustained a loss deductible from gross income.

A loss deductible under section 214 (a) (4) of the applicable taxing statutes does not depend upon the bookkeeping of the taxpayer. It is true that a loss may not ordinarily be claimed as a deduction from gross income except upon a closed and completed transaction. *United*

*States* v. *White Dental Mfg. Co.*, 274 U. S. 398; *Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243; *Weiss* v. *Wiener*, 279 U. S. 333; *Lucas* v. *American Code Co.*, 280 U. S. 445. In the last cited case the Supreme Court stated: " The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

In the proceedings before us the petitioners and the respondent are both agreed that any loss sustained by the partnership as a result of the burglary is attributable to the year 1924. It was in that year that the goods were stolen. The question before us is as to whether the amount of that loss should be reduced by the amount of the recovery on the policies. We are of the opinion that it should be. This is in accordance with the decision of the Board in *Max Kurtz*, 8 B. T. A. 679. In that case the petitioners were members of a partnership which kept its books on an accrual basis. In 1921 a considerable amount of its merchandise was destroyed by fire, which loss was fully covered by insurance. The insurance company admitted liability for whatever loss had been sustained, but disagreed with the insured as to the amount of the loss sustained. This was finally adjusted in 1922 and 1923 and the partnership was paid the total loss proven. The respondent allowed in 1921 the total loss sustained and offset against it the insurance thereon, a portion of which, however, was not received by the partnership until 1922 and 1923. It was held by the Board that the respondent's treatment of the transaction was proper. See also *Martin Veneer Co.*, 5 B. T. A. 207, in which we held that the deduction on account of loss by fire is allowable in the year in which the property was destroyed although the amount of the loss was not ascertained until a subsequent year. Cf. also *Commissioner* v. *Highway Trailer Co.*, 72 Fed. (2d) 913; certiorari denied, 293 U. S. 626; and *Commissioner* v. *Thatcher & Son*, 76 Fed. (2d) 900. In the last named case it was held that the loss of a contractor; which arose from the default of subcontractors in the erection of a building, was deductible in 1919 or prior years when the work of completing the subcontractors' contracts was performed by the taxpayer, rather than in 1928 when suit against the subcontractors was terminated adversely to the taxpayer.

In *Allied Furriers Corporation*, 24 B. T. A. 457, the facts were that on or about February 8, 1925, the petitioner's warehouse was burglarized and goods of a value of $23,984.72 were stolen. The petitioner was indemnified by an insurance policy against a loss by burglary. The insurance company refused to pay the loss and a suit was brought against it which was decided adversely to the petitioner in 1928. The petitioner claimed the deduction of the loss in its income tax return for 1928 and we held on the facts in the case that the loss was deductible in 1928. We were there confronted by a situation where appar-

ently the taxpayer, fully believing that he was protected by his insurance policy against loss, made no claim for the loss in 1924. That year was not before us. The taxpayer did, however, claim the deduction for the loss in 1928, the year when it was definitely proven that it was not entitled to recover under its policy. In our opinion in that case we referred to the decision of the Supreme Court in *Lucas* v. *American Code Co., supra*, and called attention to the fact that:

\* \* \* the Supreme Court refused to allow a deduction for loss by reason of breach of contract for the year in which the breach occurred. The court specifically rejected the theory that a loss is " sustained " when the events occur which fix it, so as to preclude a deduction for it in a later year when in a practical sense it is determined by litigation brought to a final conclusion. \* \* \*

The facts in the *Allied Furriers Corporation* case are substantially different from those which obtain in the proceeding at bar. If the opinion in that case controls here it would simply mean that the respondent was in error in permitting the deduction from the gross income of $6,803.61 as the loss sustained by the partnership in 1924. The respondent has not, however, moved for an increase in the deficiencies determined against the petitioners for 1924 and the only question before us is whether the partnership is entitled to deduct from the gross income of 1924 any part of the $27,500 representing the payment made by the insurers upon the insurance policies in question. We see no reason why we should not determine the issue in the light of the known facts, even though some of those facts did not come to light until after the close of the calendar year 1924. We sustain the respondent in the disallowance of the deduction of the $27,500 in question.

Reviewed by the Board.

> *Judgment will be entered for the respondent.*

SEAWELL dissents.

---

LEECH, dissenting: We are not here concerned with a determination of, if, and when a loss was sustained. Cf. *Lucas* v. *American Code Co.*, 280 U. S. 445.

The partnership here sustained a definite, completed, and admitted loss of $34,303.61 in 1924, when the burglary of that amount occurred in 1924. *Peterson Linotyping Co.*, 10 B. T. A. 542; *Grenada Bank*, 32 B. T. A. 1290.

The firm deducted that loss, as such, in its tax return for that year. Under the specific and unambiguous terms of the applicable statutory provision, such loss was deductible then and *then only*. Congress, alone, has the authority to change that statute.

Neither the time nor amount of the loss here is affected by whether the partnership was compensated for that loss in any amount. That fact controls nothing but the amount in which the loss, admittedly

sustained, was deductible. The statutes [1] do not limit such deductibility here, to the amount not "*covered*" by insurance, but limit it to the amount "* * * not compensated for by insurance * * *."

Our inquiry is then, whether the present record establishes that compensation for that loss, and its amount, was realized by the partnership during that tax year.

The partnership was on an accrual basis. Only such "compensation" was then realized as was then accruable. *Commissioner* v. *Thatcher & Son*, 76 Fed. (2d) 900, reversing 30 B. T. A. 510. And, only such "compensation" was then accruable as it was reasonably certain then the partnership would receive. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Commissioner* v. *Thatcher & Son, supra; Dexter Sulphite Pulp & Paper Co.*, 23 B. T. A. 227. Nor is that legal accruability in 1924 affected by the settlement of the contested insurance claims in 1925. *Central United National Bank*, 33 B. T. A. 588. Cf. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151.

Here, in 1924, the partnership held policies of insurance in two English companies operating through Lloyds. The theft occurred in March of that year. From that time until after December 31, 1924, the companies not only denied the amount of the loss, but repudiated all liability. Furthermore, until after the end of 1924, it seemed impossible for the partnership to secure service in a suit on the policies brought in California, and, if judgment on such suit were to be had, there were no assets in that state with which to satisfy it.

Certainly, under such circumstances, the insurance companies could not have accrued any amount as a deduction for 1924. *Lucas* v. *American Code Co., supra; Dexter Sulphite Pulp & Paper Co., supra.*

A *fortiori*, the same doubtful character of the contested liability which would not support that assumed deduction prevented the accrual of the same amount by the present partnership. That is the decision of the Circuit Court of Appeals for the Second Circuit in the case of *Commissioner* v. *Thatcher & Son, supra.* There, the "compensation" of a taxpayer for a loss sustained by reason of a default of his subcontractors was held not to have been accruable, and thus not realized, because of the contemporaneous existence of the taxpayer's contested rights to recoupment on the subcontractors' breach of contract, *and the subcontractors' surety bonds for faithful performance of their contracts.* I perceive no difference, for present purposes, in the legal status of the partnership here, under their insurance policies.

The disputed loss of the partnership in the amount of $34,303.61 occurred in 1924 and was not "compensated for by insurance or otherwise." *Commissioner* v. *Highway Trailer Co.*, 72 Fed. (2d) 913,

---

[1] Sec. 214 (a) (4), Revenue Acts of 1924 and 1926:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business."

reversing 28 B. T. A. 792; certiorari denied, 293 U. S. 626, and *Commissioner* v. *Thatcher & Son, supra.*

Compensation for that loss, accruable in a later year, is taxable as income in that later year. *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359; *Commissioner* v. *Thatcher & Son, supra; South Dakota Concrete Products Co.,* 26 B. T. A. 1429.

In my judgment, the petitioners sustained a loss of $34,303.61 in 1924, for which they were not compensated in any amount during that year. The loss was, therefore, deductible *in toto* on their tax returns covering that period.

TRAMMELL agrees with this dissent.