Harry S. Spectre and Vivian B. Spectre v. Commissioner.
Spectre v. Commissioner
Docket No. 5574-63.
United States Tax Court
T.C. Memo 1966-97; 1966 Tax Ct. Memo LEXIS 183; 25 T.C.M. (CCH) 519; T.C.M. (RIA) 66097; May 16, 1966
*183 Petitioners' residence was destroyed by fire in 1957. The residence and contents were insured in the respective amounts of $25,000 and $10,000. Petitioners' claim against the insurer was contested in court. They recovered a judgment for $24,000 for loss on the residence and $9,550 for loss on contents. They collected the amount of the judgment and incurred expenses of $4,300 in the litigation. Held: (1) Petitioners' loss was $4,300; (2) The loss is deductible in the year of recovery; (3) Petitioners have not proved that deductions for business expenses claimed in 1959 and 1960 are allowable; (4) Petitioners are liable for an addition to tax for delinquency in filing their return for 1959. Michael Needle, for the petitioners. Robert B. Dugan, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income tax for the calendar years 1959, 1960, and 1961 in the respective amounts of $4,353.80, $3,280.02, and $2,770.04, and an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 for delinquency in filing the return for 1959 in the amount of $1,080.92. The issues for decision are (1) what was the amount of the loss sustained by the petitioners in a fire which destroyed their residence in 1957; (2) whether any part of this loss is deductible in the taxable years; (3) whether petitioners are entitled to a deduction of $4,000 alleged to have been paid in 1959 as a sales commission; (4) whether petitioners are entitled to deductions claimed in 1960 for sales promotion expenses and entertainment expenses in the respective amounts of $1,080.50 and $3,556.20; and (5) whether petitioners are liable for an addition to tax for failure to file their return for 1959 within the extended period granted by the district *185 director. Some facts are stipulated.
Findings of Fact The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The petitioners are husband and wife who reside in West Falmouth, Massachusetts. They filed joint income tax returns for the calendar years 1959, 1960, and 1961 with the district director of internal revenue at Boston, Massachusetts. In 1950 and until 1954 the petitioners lived in an 11-room house in Newton, Massachusetts. They had a summer place at Harwich, Massachusetts, on the Cape Cod peninsula. In 1950 Harry S. Spectre was the principal officer and shareholder of Spectre Construction Company, Inc., a corporation engaged in the construction business. The corporation was adjudicated bankrupt in 1950. The Peerless Insurance Company, of Keene, New Hampshire, which had furnished performance bonds for the corporation, obtained a judgment against Spectre in a substantial (undisclosed) amount because of the corporation's default. As a result of the judgment the petitioners were forced to sell their house in Newton in about 1954. In 1950 or 1951 Spectre purchased a tract of land in Truro, Massachusetts, on Castle Road. *186 Title to the property was placed in the name of another person, Emanuel Wensley, to prevent its seizure by Peerless. In 1956 petitioners constructed a personal residence on this land. At the time of construction the petitioners obtained a mortgage loan in the amount of $15,000 from Seamen's Savings Bank, Provincetown, Massachusetts. Petitioners lived in this residence in 1956 and 1957. On September 20, 1957, the Truro residence was destroyed by fire. At the time of the fire the petitioners and their children were at the Harwich summer place. The residence at Truro was insured for $25,000. The petitioners' personal property therein was insured for $10,000. The residence (not including the land) was assessed by the town at $6,737. It was the local custom to set the assessed value at approximately 30 percent of the fair market value of a residence. After the fire, Spectre told the fire marshal that Wensley owned the property. Petitioners made from memory a list of the furniture and furnishings and personal property destroyed by the fire. Their original records were destroyed in the fire. They made estimates of the values of the items in this inventory. The inventory lists items *187 of furniture, rugs and draperies, clothing, glassware and dishes, linens, books, sporting equipment, liquor, and contents of various closets and chests, with valuations which collectively aggregate $45,726. Some items are described as antiques. Among the individual pieces listed are a grandfather clock, $1,500; a mahogany bookcase, $1,200; antique buffet, $1,000; antique dropleaf, $1,000; Chinese antique rug, $900; antique dining table, $900; French provincial bed, $650; antique oversize sofa, $950; Sheraton inlay chest and dresser, $600 and $550; and coffee table, $550. The petitioners' claim against the insurer was contested in court. They obtained a judgment for $24,000 on the loss of the residence and $9,550 for loss of contents. They collected the full amount of the judgment. In April 1960 the petitioners requested an extension of time until June 15, 1960, for filing their tax return for 1959, stating the reason as follows: Litigation is about ended regarding casualty fire loss and insurance recovery. Amended returns for calendar years 1957 and 1958 will have to be filed. An extension was granted to June 15, 1960, by the district director. The petitioners' return for 1959 *188 was not filed until April 1961. On April 11, 1961, the petitioners filed amended returns for 1957 and 1958 and original returns for 1959 and 1960. They filed a return for 1961, the filing date of which is not shown. In the petitioners' amended return for 1957 they claimed a loss from casualty, computed as follows: Fire occurred on premises at Castle Road, Truro, Mass. in house owned by
taxpayers; completely destroyed, September 20, 1957.
Building destroyed, value before fire
$34,500.00
Contents destroyed, value before fire (See schedules prepared by
taxpayer)
45,726.00
Total fire loss
$80,226.00
Amounts Recovered by Insurance
On contents
$ 9,550.00
On building
24,000.00
$33,550.00
Less - Cost of securing recovery: Attorney fees
$2,500.00
Insurance adjuster
1,800.00
4,300.00
Net recovery
29,250.00
Casualty loss
$50,976.00
On the petitioners' amended return for 1958 and the returns for 1959, 1960, and 1961 they claimed a carry-forward of a net operating loss against the income reported in each year, as follows: Loss Carry-
Forward
Year
Gross Income
to This Year
1958
$ 5,933.23
$47,859.94
1959
16,675.87
41,926.71
1960
12,630.02
25,250.84
1961
15,566.79
12,620.82
*189 The petitioners filed no income tax returns for 1955 or 1956 on the grounds that they did not have taxable income in excess of $600. In the years 1957 through 1960 Vivian was employed by the town of Marion, Massachusetts, as a teacher. She reported wages on the tax returns for such years in amounts as follows: Year
Amount
1957
$1,352.98
1958
4,323.74
1959
4,567.12
1960
947.78
On the petitioners' amended return for 1957 Spectre reported income from business as a commission agent, showing total receipts of $3,492.76, deductions of $1,729.68, and net profit of $1,763.08. The amended return for 1957 reported adjusted gross income of $3,116.06 and claimed specific deductions of $762.04 and five exemptions amounting to $3,000, as well as the deduction of $50,976 for the casualty loss. On the amended return for 1958 Spectre reported his business as Contractor-Sales Agent, showing total receipts of $8,073.70, cost of goods sold $951.21, business deductions $5,513, and net profit $1,609.49. The total income shown was $5,933.23. Specific deductions of $907.84 and five exemptions amounting to $3,000 were listed. Adjusted gross income was shown as "None," by *190 application of the claimed net "operating" loss carry-forward. On the return for 1959 Spectre reported his business as Contractor-Sales Agent, showing gross receipts of $49,850 and net profit of $12,108.75. The deductions for business expenses included an item of $4,659.45 for sales commissions. Specific deductions claimed amounted to $779.50, and the return listed four exemptions. Adjusted gross income was shown as "None" by application of a claimed net "operating" loss carry-forward. On the return for 1960 Spectre reported his business as Contractor and showed receipts from operations $29,694.72 and net profit of $11,682.24. The deductions for business expenses included an item of $1,080.50 for sales promotion and an item of $3,556.20 for "sales, meals, cigars, entertainment." No itemized deductions were claimed. Four exemptions were listed. Adjusted gross income was shown as $12,630.02, and offset by the net "operating" loss carry-forward. On the return for 1961 Spectre reported his business as contractor and salvage sales, and showed receipts of $27,850 from contracting and $2,408.94 from sales of salvage and commissions, and a net profit of $15,566.79. Itemized deductions *191 of $662.58 and four exemptions were listed. A carry-forward loss of $12,620.82 was claimed as reducing the income. The value of the petitioners' property at Truro, excluding the land, immediately before the fire was $33,550. They subsequently collected insurance in this amount at an expense for attorneys' fees and adjusters' charges of $4,300. Petitioners had a casualty loss in the amount of $4,300 which is deductible in the year in which they collected the judgment on their insurance claim. Petitioners are not entitled to a deduction claimed for 1959 in the amount of $4,000 for sales commissions, nor are they entitled to deductions claimed for 1960 in the amount of $1,080.50 for sales promotion or in the amount of $3,556.20 for "sales, meals, cigars, or entertainment." Petitioners were delinquent without reasonable cause in filing their return for 1959. Opinion The petitioners suffered a loss when their residence at Truro was destroyed by fire in September 1957. They allege that the total loss amounted to $80,226, that they recovered $33,550 through insurance, and paid costs of $4,300 in securing such recovery, realizing a net loss of $50,976. After applying this against *192 their income for 1957 and 1958, they claim a loss carry-forward offsetting all their reported income for 1959 and 1960 and most of that reported for 1961. Respondent's position is that petitioners have not proved a loss in excess of the insurance recovered and that there is no amount to be carried forward to the taxable years 1959, 1960, and 1961. The loss consisted of two parts: The building and the contents. Petitioners allege that the building cost $34,500 when constructed in 1956. It was insured for $25,000. They have introduced no evidence to substantiate the cost. Their records were lost in the fire, but they have given no reason why duplicate records or receipts could not have been procured, nor why one or more of the subcontractors who took part in the construction or some competent appraiser has not testified in support of their valuation. In Louis Broido, 36 T.C. 786 (1961), we said (794-795): Where property is damaged or destroyed by fire, storm, shipwreck, or other casualty, it appears settled law that a proper measure of the loss sustained, and thus the amount of the allowable deduction, is the difference between the fair market value of the property *193 immediately before the damage occurred and its fair market value immediately after, not to exceed basis and to the extent not compensated for by insurance or otherwise. See, also, Income Tax Regs., section 1.165-7(b). According to Spectre's testimony, the insurer litigated the question of liability, judgment for $24,000 was given petitioners for the loss on the building, and the full amount of this judgment was collected. The fact that the recovery was less than the face amount of insurance tends to show that the loss did not exceed the judgment. The assessed value of the building was $6,737, and, according to local custom, assessments were made at approximately 30 percent of fair market value. This indicates a value of approximately $20,000 and tends to show that the insurance recovery was not less than the actual loss on the building. There is considerable doubt that petitioners could have invested as much as $34,000 in the building. A substantial judgment had been obtained against Spectre a few years earlier. He could not recall whether this was in excess of $300,000, or $200,000, or $100,000. Because of the judgment, he placed the title to the *194 land at Truro in the name of another person. As a consequence of the judgment, the petitioners were forced to sell their Newton residence. They did not file tax returns for 1955 or 1956 because their income was less than $600 in each year. Spectre's business produced less than $1,800 net income in 1957. They borrowed $15,000 on a mortgage to build the Truro residence. There is no evidence or explanation as to the source of sufficient additional funds to account for the investment of the amount alleged. The burden is upon the petitioners to show the fair market value of the residence before the fire. They have not shown that the value was in excess of the amount of insurance recovered. Petitioners allege that the value of the contents of the house lost in the fire was $45,726. This figure was based on an inventory or list made from memory by the petitioners immediately after the fire and with valuations according to their best estimates made at that time. Their records were lost in the fire. The contents were insured for $10,000, and in the litigation with the insurer the petitioners recovered a judgment for $9,550, which amount they collected. Spectre testified that the home *195 in Newton was an 11-room house; that he carried $50,000 of insurance on the contents; that all furniture and furnishings were moved from Newton to the Truro house, which had only seven or eight rooms; that he requested his agent to transfer the insurance to cover the contents at the Truro location and that he later discovered there was only $10,000 of insurance on contents at that location; and that, although he made this discovery before the fire, he could not then afford to pay for more. There is no verification of the statement that petitioners' personal property was insured for $50,000 at any time. It would have been possible to prove this by testimony or records of their agent. Spectre admitted that some of the furniture was sold in 1956, but no indication of the quantity sold was given. He said that some of the furniture in the house at the time of the fire had been purchased from Henry Halper, who was a liquidator of estates as well as a dealer in furniture and jewelry. Halper was not called as a witness to verify the facts or the values of articles sold by him to the petitioners, nor was any explanation given as to why he was not called. No other witness who might have *196 knowledge of the articles or the values of some of them was called. The valuations placed on the articles inventoried were those provided by the petitioners from memory. The memory of Spectre was shown to be unreliable. He did not recall whether the judgment obtained against him by Peerless Insurance Company was over $300,000, or over $200,000, or over $100,000. Vivian, although available to testify, was not called as a witness. We have listed in the findings of fact some of the items and valuations contained in the inventory. Other than referring to some of them as "antiques," there is no sufficient descriptions of most of the articles to justify the substantial valuations assigned to them. Spectre admitted that he told the fire marshal after the fire that Wensley was the true owner of the property. Under the circumstances we do not feel justified in placing any reliance upon his testimony. We are not informed as to the reason why the insurance company litigated the issue of its liability. The judgment obtained by the petitioners for the loss on contents was $9,550, or an amount less than the face amount of the insurance. This is perhaps the most convincing evidence that the loss *197 on account of the contents was not in excess of the amount of insurance carried. Petitioners have failed to establish that the loss was in excess of the amount of the judgment they recovered against the insurer. The petitioners' amended return for 1957 reports a recovery of the insurance on house and contents in the amount of $33,550, and shows that in effecting the recovery they incurred attorneys' fees and adjusters' charges of $4,300. Respondent has not disputed these expenses. We have found that the value of the petitioners' property at Truro, excluding the land, immediately before the fire was $33,550. This property was completely destroyed by the fire. Since the petitioners recovered judgment for this amount from the insurer, for which recovery they paid attorneys' fees and adjusters' charges in the amount of $4,300, the net amount recovered was $29,250. The net amount of their loss was, therefore, $4,300. The petitioners are claiming the loss as a deduction for the taxable year 1957 with a carry-over to the taxable years. Although the fire occurred in 1957, the loss was covered by insurance in the face amount of $35,000. It has been held that - where fire, embezzlement *198 or other casualty occurs and is covered by insurance or otherwise, no deduction can be claimed for the year of the casualty, but that it is allowable for the year when the claim for compensation thereof is settled. Allied Furriers Corporation, 24 B.T.A. 457, 459 (1931); Rose Licht, 37 B.T.A. 1096 (1938); Commissioner v. Harwick, 184 F. 2d 835 (C.A. 5, 1950); Louis Gale, 41 T.C. 269 (1963). Accordingly, the loss in the present case is deductible, not for 1957, but for the year in which the petitioners recovered on their claim against the insurer. The record does not show the date of such recovery, but apparently it was either in 1960 or in 1961. In April 1960 when they requested an extension of time for filing their tax return for 1959 they stated that the litigation was about ended. In early 1961 they filed the amended returns for 1957 and 1958 and original returns for 1959 and 1960 showed the amount collected. Since both of these years are before us, the allowable loss of $4,300 may be taken into consideration in the proper year in a recomputation pursuant to Rule 50. On the petitioners' return for 1959 a number of deductions *199 were claimed for cost of operations and for operating expenses of Spectre's business. One such item was for $4,659.45 for sales commissions. Respondent disallowed the amount of $4,000 "as it has not been established that such amount constitutes an ordinary and necessary business expense or was expended for the purpose designated." It is stipulated that a book kept in the ordinary course of Spectre's business shows an item under date of August 1, 1959, reading "Comm. paid - $4,000." The book does not identify the payee or the purpose of the payment. Spectre testified that the payee was John T. Hannon, of Randolph, Massachusetts; that Hannon was then assistant to the chief engineer of waterways, Commonwealth of Massachusetts; that he is a registered engineer; that he performed engineering and supervisory services for Spectre in the latter's business of shore protection against erosion, on a job at a private estate at South Harwich, and also appeared as Spectre's representative at certain public hearings by the Commonwealth Department of Public Works and the Corps of Engineers, United States Army, in connection with their jurisdiction over tidal waters and in securing permits for performing *200 work on the shore; and that he paid Hannon $4,000 in cash in accordance with their contract. Spectre said he had no checking account at the time. The burden is on Spectre to prove that the payment was of an expense actually incurred in his business. No receipt was offered in evidence. Hannon did not appear as a witness and no explanation was offered as to why he was not called upon to testify. Respondent did not question the other business deductions claimed on the 1959 return, from which it would appear that petitioners' records were adequate to support them but not to support this particular item. Spectre's uncorroborated statement is not enough. We sustain respondent's determination. Respondent disallowed two items of business deductions claimed on the petitioners' return for 1960, one in the amount of $1,080.50 for sales promotion and one in the amount of $3,556.20 for sales, meals, cigars, entertainment. Spectre testified that he was in the shore erosion business in that year on a job at South Harwich, that he made trips to New York City and Louisville, Kentucky, and called on several people in attempting to secure additional contracting jobs in that business, and that the *201 expenses were incurred in these attempts. There was no corroboration of these statements. Respondent did not question other expense items claimed as deductions on the return, and evidently petitioners' records were sufficient to support those deductions. The burden of proof is upon the petitioners, and in the absence of some supporting evidence we must sustain the respondent's disallowance of the two items in controversy. See Stanley Rosenstein, 32 T.C. 230, 235 (1959). Respondent determined an addition to tax for failure to file the return for 1959 within the time prescribed by law or within the period of extension to June 15, 1960, granted by the district director. The return was not filed until April 1961. There is no showing that the failure was due to reasonable cause. In the absence of such a showing, the addition to tax determined by respondent is sustained. Sec. 6651(a), I.R.C. of 1954. Decision will be entered under Rule 50.