Theodore A. Granger and Elizabeth T. Granger v. Commissioner.
Granger v. Commissioner
Docket No. 1327-67.
United States Tax Court
T.C. Memo 1970-155; 1970 Tax Ct. Memo LEXIS 206; 29 T.C.M. (CCH) 667; T.C.M. (RIA) 70155; June 15, 1970, Filed Theodore A. Granger and Elizabeth T. Granger, pro se, 2910 Dogwood Dr., Henderson, N. C. Ernest J. Wright, for the respondent. KERN
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income taxes as follows: Petitioner(s)
Year
Amount
Theodore A. Granger
1958
$ 123.04
Theodore A. Granger and Elizabeth T. Granger
1959
1,732.00
Theodore A. Granger
1961
17.00
Theodore A. Granger
1962
774.00
Theodore A. Granger
1963
972.50 Hereafter Theodore A. Granger will sometime be referred to as "petitioner." To a considerable extent these deficiencies resulted from the decrease in the amount of net operating loss reported by petitioner in his 1960 Federal income tax return from $167,863.00 to $5,440.45 and the consequent disallowance of net operating loss carryback *208 deductions claimed for 1958 and 1959 and net operating loss carryover to 1961, 1962 and 1963. 668 In paragraph 4 of their petition, petitioners allege that the proposed deficiencies for 1958 and 1959 had been "paid and settled in full by Court Order." Since petitioners did not introduce any evidence on this point at the trial of this case and did not discuss this point on brief, it appears that petitioners have abandoned this claim. The other issues raised by the pleadings are the following: (1) Whether a reasonable expectation of recovery existed during 1960, 1961, 1962 and 1963, with respect to an insurance claim arising from the destruction by windstorm in February 1960, of a factory which petitioner was constructing. [1]
(2) Whether petitioner's cost basis in a house he had under construction exceeded the amount of the proceeds realized in its 1960 foreclosure sale. (3) Whether petitioner is entitled to interest expense deductions in 1960, 1961, 1962 and 1963 in excess of *209 the amounts allowed in the statutory notice of deficiency. (4) Whether petitioner incurred certain travel and legal expenses in 1960, and, if so, in what amount. (5) Whether the entire $3,000 paid to the petitioner during 1963 by Foundation Accounts, Inc. was taxable to petitioner in 1963 even though $600 thereof was attributable to services performed during 1964. (6) Whether all or any part of the amounts mentioned in (5) above, was self-employment income. Findings of Fact Some of the facts and exhibits were stipulated and are found to be as stipulated. Petitioner and Elizabeth T. Granger resided in Henderson, North Carolina at the time the petition was filed in this case. Petitioner filed individual Federal income tax returns for the taxable years 1958, 1960, 1961, 1962 and 1963 with the district director of internal revenue, Greensboro, North Carolina. Petitioner and Elizabeth T. Granger filed joint income tax returns for the taxable years 1957 and 1959 with the district director of internal revenue in that city. On March 21, 1961, petitioners filed a From 1045, Application for Tentative Carry-back Adjustment, with the district director in Greensboro, claiming an overassessment *210 and overpayment of income tax for the taxable years 1957 and 1959 in the amounts of $233.00 and $1,732.00 respectively, resulting from the carryback of an alleged net operating loss incurred in the taxable year 1960. Petitioners did not claim a decrease in tax for 1958 when filing the Form 1045. [2] The district director allowed the tentative overassessments as claimed by petitioners for 1957 and 1959 and, in addition, he allowed an overassessment for 1958 in the amount of $123.04. Petitioner reported no taxable income for the taxable years 1961, 1962 and 1963 by virtue of the carryover of his alleged 1960 net operating loss. Petitioner was awarded an A.B. degree by Harvard University in 1940. While at Harvard, his major courses of study were economics and engineering. He also took some courses in accounting and business administration. In 1957, petitioner was employed as an accountant by Tungsten Mines, a concern operating near Henderson, North Carolina. *211 His responsibilities included looking after construction costs of a large construction program undertaken by the mining concern and reporting thereon to its management. During 1958, 1959 and 1960, petitioner was self-employed as a designer and builder of homes for sale. During 1960, petitioner had at least three houses under construction, all of which became the subject matter of foreclosure proceedings instituted by the Citizens Bank & Trust Company, Henderson, North Carolina (hereinafter sometimes referred to as the "bank"). With respect to one of these houses, described as "Lot 24, Westover (Whiteoak) Drive, Granger Job #24" in a schedule set out below in these findings, petitioner borrowed from the bank three amounts at various times totaling $13,500.00 and paid interest with respect to these amounts until July 15, 1960. On October 24, 1960, the house was foreclosed upon by the bank and petitioner's total debt to the bank with respect to the house of $13,500.00 plus unpaid interest since July 15, 1960, 669 was cancelled. [3] The house was designed by petitioner, and its construction plans indicate that the completed building would comprise 1,941 square feet. In his individual *212 Federal income tax return for 1960, petitioner claimed a $5,900.00 foreclosure loss deduction attributable to this house, which he explained as follows: "Lost $20,000.00 house by foreclosure, less $14,100.00 - $5,900.00." This deduction was disallowed by respondent. In addition to constructing houses, petitioner began the construction of a factory in Henderson, North Carolina. The factory was severely damaged by a snow and windstorm in February 1960, forcing the abandonment of the construction work. The damage to the building was covered by builders risk insurance policies. For reasons not shown by the record, the insurance companies declined to acknowledge their liability to make payment *213 to petitioner under such policies. Thereupon petitioner filed an action in the United States District Court, Raleigh, North Carolina, against the insurance companies carrying the business risk insurance on his damaged factory to collect under these policies on account of the substantial damages sustained. In his Federal income tax return for 1960, petitioner claimed a business casualty loss deduction in the amount of $160,863.00 for the damage to his factory. Petitioner labeled the amount of the loss as the "Total Cost of Replacement" of the factory. On some date not disclosed by the record but after November 25, 1963, and before June 7, 1965, petitioner was awarded a judgment against the insurance companies in the amount of $128,443.34, and the insurance companies paid into the office of the Clerk of the United States District Court the amount of such judgment. Disputes arose between petitioners, the bank, a materialman having a lien and the United States Government which had tax claims and liens against petitioners and their properties. Finally, on or before July 27, 1965, these disputes were settled either by agreement or decision of the court and the funds held by the Clerk of *214 the Court were distributed. The liens of the materialman and of the United States were paid and the balance was paid to the bank. Pursuant to a contract between the bank and petitioners, the bank agreed to release its claims against them with the exception of a note for $10,000.00 secured by a second mortgage on their home. This agreement is referred to in greater detail infra. Respondent disallowed the claimed casualty loss deduction in the explanation of adjustments to petitioner's 1960 income contained in the statutory notices of deficiency issued to petitioners. This adjustment along with others made to petitioner's 1960 Federal income tax return, caused a substantial reduction in the net operating loss reflected for that year. As a result, respondent disallowed petitioner's net operating loss carryback deductions claimed for 1958 and 1959, and his net operating loss carryover deduction claimed for 1961, 1962 and 1963. During 1960 and in connection with his suit against the insurance companies, petitioner and his attorneys traveled to Kansas City, Missouri, for the purpose of consulting with engineers employed at the Butler Steel Company who had designed the prefabricated *215 steel used in the damaged factory. To pay the travel expenses petitioner borrowed $750.00 in that year. In filing his individual income tax return for 1960, petitioner claimed a $1,100.00 deduction for travel and legal expenses attributable to that trip which was disallowed by respondent. Petitioner reported his income from his construction business using a method of accounting which he referred to as the "job completion" basis. Under this method of accounting, petitioner generally charged his various construction jobs with the cost of expenses at the time he wrote the checks for payment of the expenses. When he sold a house he deducted the aggregate expenses attributable to the house from its selling price for the purpose of reporting income from its sale. Petitioner did not charge his construction jobs with the interest expense that he incurred. He always reported interest expense on an annual basis, deducting it in the year that it was paid. Petitioner introduced evidence which showed that he paid the bank a total of $2,008.58 in interest related to his construction business in 1960; however, in the statutory notice of deficiency respondent determined that petitioner was entitled *216 to deduct $2,066.08 as 670 business interest expense. [4] On his federal income tax returns for 1961, 1962 and 1963, petitioner did not claim a deduction for interest expense, nor did petitioner offer evidence that he paid business interest in those years except to the extent shown in the schedule set out below in these findings. Petitioners have from time to time borrowed certain sums of money from the Citizens Bank & Trust Company, Henderson, North Carolina. On occasion, petitioners used the funds advanced by the bank for purposes other than those set forth in the schedule below. Set forth in the following schedule of loans is an analysis of the outstanding loans owed by the petitioner as of June 7, 1965: to Citizens Bank & Trust Company (hereinafter sometimes referred to as the "loan schedule"): No. 1 - Lot 24 Westover (Whiteoak) Drive, Granger Job #24
13,500.00
Renewed numerous times and interest
7,900.00
Borrowed 4/7/59
4,000.00
Borrowed 3/6/59
1,600.00
Borrowed 2/28/59
10,000.00
Borrowed 3/18/59 Granger Job #23
No. 2 - Vacant Lot #23, Westover (Whiteoak) Drive,
TOTAL DUE ON LOAN 6/7/65
0
-13,782.97
Foredlosed 10/24/60
13,782.97
282.97
Interest 7/15/60 to 10/24/60 paid to 7/15/60
- 500.00
Repaid 7/6/59
12,500.00
Borrowed 5/20/59
No. 3 - Factory, Oxford Road, Granger Job #300
TOTAL DUE ON LOAN 6/7/65
15,296.69
50,000.00
Renewed numerous times and interest
12,500.00
Borrowed 6/4/59
12,500.00
Borrowed 8/4/59
12,500.00
Borrowed 6/19/59
2,616.32
Interest 12/30/61 to 6/7/65
12,680.37
Balance due after foreclosure
- 1,409.96
Proceeds of Foreclosure 12/30/61
14,089.83
Total due 12/30/61
1,089.83
Interest 8/10/60 to 12/30/61 8/10/60
13,000.00
Renewed and interest paid to
3,000.00
Borrowed 4/28/59 Granger Residence
No. 8 - Installment Loan, Air-Conditioning T.A.
TOTAL DUE ON LOAN 6/7/65
324.37
74.37
Interest 6/22/60 to 6/7/65
250.00
Borrowed 6/22/60
No. 7 - Farmall Tractor Loan, Chattel Mortgage of 6/22/60
TOTAL DUE ON LOAN 6/7/65
5,178.00
1,178.00
Interest 7/15/60 to 6/7/65 paid to 7/15/60
4,000.00
Renewed numerous times and interest
4,500.00
Borrowed 5/15/59
No. 6 - Unsecured Loan on Financial Statement
TOTAL DUE ON LOAN 6/7/65
12,900.00
2,900.00
Interest 7/12/60 to 6/7/65 interest paid to 7/12/60
10,000.00
Borrowed 12/14/59, Renewed numerous times and
No. 5 - Second Mortgage on T. A. Granger Home
TOTAL DUE ON LOAN 6/7/65
28,149.77
4,814.49
Interest 12/30/61 to 6/7/65
- 4,377.22
Proceeds of Foreclosure 12/30/61
23,335.28
Balance due after foreclosure
27,712.50
Total due 12/30/61
2,712.50
Interest 3/10/60 to 12/30/61 paid to 3/10/60
25,000.00
Renewed numerous times and interest
6,500.00
Borrowed 10/6/59
3,500.00
Borrowed 9/14/59
15,000.00
Borrowed 9/2/59
No. 4 - Lot, West End Drive, Granger Job #315
TOTAL DUE ON LOAN 6/7/65
65,741.67
15,741.67
Interest 3/10/60 to 6/7/65 paid to 3/10/60 as of 1/15/60
273.00
TOTAL DUE ON LOAN 6/7/65
361.41
Interest 1/15/60 to 6/7/65
88.41
No. 9 - Unpaid Premiums due Insurance Department
TOTAL DUE ON LOAN 6/7/65
1,311.18
333.18
Interest 10/6/59 to 6/7/65
978.00
Unpaid balance since Oct. 6, 1959
TOTAL, NOTES, INTEREST ON NOTES, EXPENSES
TOTAL EXPENSES (NOT INCLUDING INTEREST) 17,737.58
15,787.58
Court Costs (Engineers - Censert - So. Testing Co.)
1,450.00
Note T. A. Granger 3/7/61
500.00
Note T. A. Granger 9/22/60 (Kansas City Trip) T. A. Granger Home
No. 10 - Expenses - Secured by Third Mortgage on (NO INTEREST FIGURED ON EXPENSES)
147,000.67
*217 672 On June 7, 1965, petitioner entered into an agreement with the Citizens Bank & Trust Company which provided, in general, that the bank would cancel all debts owed by the petitioners to it, as set forth in the paragraph above, except, (1) the second mortgage on petitioner's house and (2) the right to the first $7,000.00 of the proceeds realized on the foreclosure sale of factory property, provided any amounts recovered over $7,000.00 were credited to the second mortgage on petitioner's house. In consideration for the bank's cancellation of the debts owed by them, petitioners agreed to make certain payments on their mortgaged property, and release to the Bank the $128,443.34 insurance recovery, held by the Clerk of the United States District Court, Raleigh, North Carolina, plus additional interests and costs agreed upon by the District Court, less any liens allowed or recognized by the Court. On July 27, 1965, the United States District Court, Raleigh, North Carolina held that Greystone Concrete Products, Inc., had perfected a materialman's lien and had a right to a net recovery of $3,462.90 out of the insurance award recovered by petitioners from the insurance companies. *218 In addition, the Court stated that the United States perfected tax liens and had a right to recover $2,017.30 out of said insurance award. [5]
Foundation Accounts, Inc., is a corporation located in Durham, North Carolina. During the course of its existence, it never had any paid employees. During 1963, petitioner was associated with Foundation Accounts, Inc., as its chief independent consultant. In addition, he was a stockholder in the corporation. In acting as chief consultant for Foundation Accounts, Inc., petitioner performed services of a technical nature which had to do with studies of polymers and expansion agents. After performing various studies, they were submitted by petitioner to the corporation for evaluation. Foundation Accounts, Inc.'s only supervision over petitioner's consulting services consisted of defining the objectives that he was to achieve. The corporation did not establish *219 working hours for petitioner. However, it did on occasion direct him to go to different areas of the country to perform services. During 1963, petitioner received from Foundation Accounts, Inc., five payments by check of $600 each for his consulting services. The first four payments were for consulting services performed by him in 1963. The final payment was received by petitioner on December 30, 1963, without restrictions on its use, for services to be performed by him during 1964. Foundation Accounts, Inc., did not withhold any payroll taxes from the fees it paid to petitioner for his consulting services; because it considered petitioner to be an independent consultant. At the time the corporation set up its books, it informed petitioner that it was not going to withhold payroll taxes from the fees paid to him. Opinion KERN, Judge: The major event which gave rise to this proceeding, and which gave rise to most of the other difficulties 673 which have beset the petitioner and his wife in recent years, was the severe damage to a factory being constructed by petitioner resulting from a snow and wind-storm in February 1960. The damage to the building was covered by insurance *220 but, for some reason not explained by the record, the insurance companies declined to acknowledge liability to petitioner and he was forced to bring a court action which resulted in a judgment in petitioner's favor at some date after November 23, 1963 and before June 7, 1965. In his income tax return for 1960, petitioner claimed a casualty loss deduction in the amount of $160,863.00 for the damage to his factory. Respondent's disallowance of this deduction together with other minor adjustments resulted in the decrease of the net operating loss for that year from the figure of $167,863.00 reported by petitioners to the figure of $5,440.45 and the consequent disallowance of net operating loss carrybacks and carryforwards claimed for the taxable years. Respondent takes the position that because the damage to petitioner's factory was covered by business risk insurance and because petitioner filed an action against the insurance companies and ultimately recovered a judgment for the damage to his factory, there was a "reasonable prospect of recovery" of a "claim to reimbursement" for the loss caused by the damage and therefore petitioner is not entitled to a casualty loss deduction in *221 1960. Respondent relies on Income Tax Regulation section 1.165-1(d)(2)(i), interpreting section 165, I.R.C. 1954[6] and effective for losses sustained after January 16, 1960, which states as follows: If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. * * * This Court has previously upheld the validity of this regulation in Louis Gale, 41 T.C. 269 (1963). *222 The burden of showing that there was no reasonable prospect of recovery at the end of a given year rests upon petitioner. Id. at 276. In this case petitioner has failed to prove that there was no reasonable prospect of recovery against the insurance companies during 1960. The only evidence offered by petitioner with respect to his prospect of recovery for the 1960 windstorm damage to the factory building then being constructed was to the effect that the insurance companies denied liability, following which denial of liability petitioner brought a court action against them resulting in the substantial recovery of the amount claimed. On similar facts we stated in Louis Gale, supra, at page 276 as follows: But petitioners claim that when the insurance companies denied liability in 1959, that fact alone deprived them of any reasonable prospect of recovery, so the loss became deductible in 1959 even though they brought suits against the insurance companies for such recovery in that year. Denial of liability by an insurer is certainly a factor to be considered in *223 deciding the reasonableness of the prospects of recovery, Coastal Terminals, Inc., supra, but it is only one factor. Such denial may be a formality; it may be specious; it may be merely the first step in a negotiated settlement; it may be only because of a disagreement as to amount; or it may be a delay to offer time for investigation. But we cannot say that denial of liability alone, without more, is the decisive factor. Of equal or more persuasive force on this point, it seems to us, is the fact that petitioners, in good faith, brought suit against the insurers in 1959, see Scofield's Estate v. Commissioner, supra, and the fact, which we may consider, that they recovered. We decide this issue in favor of respondent. Petitioner cites as error the disallowance by respondent of a $5,900.00 loss claimed by petitioner in his 1960 income tax return with respect to the foreclosure sale of a home constructed by petitioner. Petitioner testified that the cost of the home, including land and building, was $18,900.00 and that he had arranged for the sale of the property at a price of $19,700.00, but was prevented from consummating the sale because of the foreclosure proceeding, as a result *224 of which petitioner's debt to Citizen's Bank & Trust Company in the amount of 674 $13,782.97 was extinguished. Petitioner also offered into evidence certain construction plans for the home. Petitioner offered no documentary evidence as to any item of cost relating to this house and no evidence (other than the plans) which in any way substantiated the total amount which he claimed had been spent on the home. Petitioner's conclusory statements and unsubstantiated estimates of the cost of a home he built nine years prior to the trial of this case cannot satisfy his burden of proof to establish his cost basis in the foreclosed property. See Louis Halle, 7 T.C. 245, at 247-248, aff'd 175 F. 2d 500 (C.A. 2). Petitioner offered no evidence on how the construction plans for the home could be used as a basis for the determination of the cost of the completed house. Further, the record does not show whether the construction of the house was completed at the time of the foreclosure sale. We decide this issue in favor of respondent. In his petition, petitioner states that "[the] Commissioner has failed to give the [petitioner] credit for capital losses *225 and interest losses for years 1958-1965 as shown * * * by 'Exhibit B'." The "Exhibit B" to which petitioner refers in his petition includes the schedule of outstanding loans owed by petitioner to the Citizens Bank & Trust Company as of June 7, 1965, which is the "loan schedule" set out in our Findings of Fact. A copy of this exhibit is attached to the stipulation of facts submitted by the parties. In his statutory notice of deficiency, respondent determined that petitioner was entitled to deduct $2,066.08 as business interest expenses for the year 1960, but as to 1961, 1962 and 1963 respondent allowed no such deduction. At the trial petitioner failed to prove that he paid in 1960 deductible business interest expenses in an amount greater than that determined by respondent. As to petitioner's 1960 interest expenses, respondent's determination is sustained. However, the second and fourth items appearing on the loan schedule reveal that the projects described therein as "Job No. 23" and "Job No. 315" were foreclosed upon in 1961. Respondent appears to recognize that if property belonging to petitioner is sold in foreclosure proceedings, petitioner is entitled to interest deductions *226 as interest paid in the amount of interest liability satisfied from the proceeds of the foreclosure. Harold M. Blossom, 38 B.T.A. 1136. Respondent urges however that there is no evidence on how the proceeds from either of these foreclosures were applied as between principal and interest and would have us conclude that petitioner has failed to prove that any part of such proceeds constituted the payment of interest. We disagree. The prevailing rule in the United States is that in the absence of an agreement providing otherwise, a payment upon a debt consisting of principal and interest is to be treated by the debtor and creditor as first applicable to the interest due and then to the principal. Story v. Livingston, 13 Pet. 359, 38 U.S. 310 (1837); Estate of Daniel Buckley, 37 T.C. 664. The prevailing rule is followed in North Carolina. Overby v. The Fayetteville Building and Loan Association, 81 N.C. 56 (1879); Bunn v. Moore's Executors, 2 N.C. 279 (1796). There is nothing in the record which would suggest that as to the *227 second and fourth items on the loan schedule petitioner and the Citizens Bank & Trust Company had entered into an agreement which would contradict the North Carolina rule requiring that a part payment on a debt consisting of principal and interest be applied first to interest. We therefore find that petitioner is entitled to deduct in 1961 as business interest $1,089.83 as to item two on the loan schedule and $2,712.50 as to item four on that schedule or a total of $3,802.33. In his 1960 income tax return, petitioner claimed a $1,100 deduction for travel and legal expenses which was disallowed by respondent. As the trial petitioner produced no documentary evidence relating to the payment of these claimed expenses, but he did testify that he and his attorneys traveled to Kansas City, Missouri, in connection with his suit against the insurance companies, for the purpose of consulting with engineers who designed the prefabricated steel used in the damaged factory. Petitioner also testified that the loan referred to as item seven on the loan schedule, in the amount of $250.00, and the first note referred to in item 10 of the loan schedule, in the amount of $500.00, represents funds which *228 he spent on the Kansas City trip. 675 As we have already pointed out, respondent decreased the amount of net taxable loss reported by petitioner in his 1960 return from $167,863.00 to $5,440.45 and petitioner has failed to show error in respondent's determination. Under section 172 the deduction allowed petitioner for personal exemptions in 1960, totaling $2,400.00 is not treated as a net operating loss for purposes of the net operating loss carryback or carryover. Hence, petitioner's net operating loss carryback to be applied to his 1957 taxable year is $3,040.45 ($5,440.45 less $2,400.00). In petitioner's 1957 income tax return he reported adjusted gross income of $4,602.57 and five dependency exemptions, and he elected to use the respondent's tax tables to calculate his tax rather than itemize his deductions. Since no deductions for personal exemptions and no other nonbusiness deductions are allowed in computing taxable income in taxable years other than the loss year for purposes of calculating the net operating loss carried over to such years, petitioner's net operating loss carryback of $3,040.45 is to be applied against 1957 taxable income which, for purposes of the net *229 operating loss provisions, is deemed to be $4,602.57. Because of the five exemptions claimed by petitioner in 1957, respondent in his adjustments attached to the statutory notice of deficiency determined that petitioner had no tax liability for 1957. However, in order to make use of the net operating loss provisions to reduce his tax in years following 1957, petitioner would have to prove that he was entitled to business deductions in 1960 in an amount at least $1,562.12 [7] in excess of the amount allowed by respondent. Thus even if we were to decide that petitioner is entitled to the maximum travel and legal deduction in 1960 for which petitioner contends, an amount of $1,100.00, our decision would not affect petitioner's tax liability in any manner related to these proceedings in any taxable year before this Court. We therefore do not decide this question. The final matter placed at issue by the parties in their pleadings relates *230 to petitioner's association with Foundation Accounts, Inc., during the latter part of 1963. During that year petitioner received four payments of $600.00 each attributable to work performed by him during the last four months of 1963. Petitioner also received a fifth payment, by check, on December 30, 1963, intended to be compensation for work which petitioner was to perform for Foundation Accounts, Inc., during January, 1964. Petitioner did not attempt to show that there were any restrictions on his use of the fifth payment after he received it on December 30, 1963, nor did he attempt to show that Foundation Accounts, Inc., was not solvent when he received his fifth payment. Except as to his construction activities petitioner was a cash basis taxpayer. Respondent contends that under these circumstances the advance payment by check made to petitioner on December 30, 1963 constituted income to petitioner in 1963. Respondent is correct. Lavery v. Commissioner, 158 F. 2d 859 (C.A. 7) affirming 5 T.C. 1283; Hedrick v. Commissioner, 154 F. 2d 90 (C.A. 2); Obland v. United States, 278 F. Supp. 989 (E.D. Mo. 1967); L. L. Moorman, 26 T.C. 666; *231 and S.P. Freeling, 7 B.T.A. 1238. Respondent also contends that the $3,000 paid to petitioner by Foundation Accounts, Inc., in 1963 constituted "self-employment income" under section 1401 [8] because petitioner was not an "employee" within the meaning of section 1402 [9] and, by reference made in the latter section, within the 676 meaning of section 3121(d)[10] and the regulations promulgated thereunder. [11]
*232 At the trial, the President and Treasurer of Foundation Accounts, Inc., testified that the corporation never had any paid employees, that the only supervision over petitioner's activities consisted of outlining the objectives that he was to achieve, that petitioner was told that the corporation considered him to be an independent consultant, and that the corporation was not goint to withhold payroll taxes. Petitioner did not present any evidence on this issue at the trial. Lacking evidence that petitioner was under the direction, supervision or control of Foundation Accounts, Inc., as to the means or methods of accomplishing his work, see Terry C. Rosano, 46 T.C. 681, we decide this issue in favor of respondent. On the apparent assumption that this Court could redetermine any matter with respect to petitioner's tax liability for his taxable years 1957 through 1963, whether or not raised in the pleadings, petitioner gave testimony and offered certain exhibits into evidence concerning an alleged business expense in 1961 and a debt which he claimed became worthless in 1962 or 1963. These matters were not raised in the original pleadings by the parties, nor did petitioner *233 seek to amend his petition to include allegation as to these matters either at the trial or at any time thereafter. On nuerous occasions we have held that we will not, and cannot, consider issues which are not raised in the pleadings. J. William Frentz, 44 T.C. 485, aff'd, 375 F. 2d 662 (C.A. 6); Lynne Gregg, 18 T.C. 291; Samuel E. Hirsch, 16 T.C. 1275. In order to reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. Petitioner appears to have abandoned his claim that his business casualty loss, if found to be deductible, exceeds his cost basis as determined by respondent in the notice of deficiency.↩
2. In the Form 1045 which he filed, petitioner made this statement: "Taxpayer Cannot find his copy of 1958 tax return. Income tax rebate for 1958 taxable year is therefore waived in order to expedite carry-back adjustment."↩
3. In the absence of proof to the contrary we assume that in connection with this foreclosure sale the mortgagee bank bid in the amount of the mortgage debt plus the interest due thereon and received in return the complete legal and equitable title to the property thus extinguishing the debt. Compare item 1 of the schedule set out infra which purports to reflect this transaction with other items therein. In this transaction there is no "balance due after foreclosure" shown in the schedule.↩
4. Respondent does not contend herein that petitioner is entitled to a business interest deduction in an amount less than the amount determined in his notice of deficiency.↩
5. The signature of the Assistant United States Attorney representing the United States in connection with the tax liens does not appear on the copy of the consent judgment admitted into evidence or the copy of the same consent judgment which petitioners attached to their petition.↩
6. Hereafter all statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
7. The amount noted is calculated by subtracting $3,040.45, petitioner's net operating loss carryback from the year 1960 as determined by respondent, from $4,602.57, petitioner's taxable income in 1957 for purposes of the net operating loss provisions.↩
8. SEC. 1401. RATE OF TAX. In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax * * *. ↩
9. SEC. 1402. DEFINITIONS. (a) Net Earnings From Self-Employment. - The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * (b) Self-Employment Income. - The term "self-employment income" means the net earnings from self-employment derived by an individual * * * during any taxable year * * * (c) Trade or Business. - The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 * * *, except that such term shall not include - * * * (3) the performance of service by an individual as an employee * * * (d) Employee and Wages. - The term "employee" * * * shall have the same meaning as when used in chapter 21 (sec. 3101 and following, relating to Federal Insurance Contributions Act). ↩
10. Section 3121(d)↩ defines as an "employee," for purposes here relevant, "any individual who under the usual common law rules applicable in determining the employer-employee relationship has the status of an employee. 11. Sec. 31.3121(d)-1 [Employment Tax Regs.] Who are employees. (c) Common law employees. * * * (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursult of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.↩