PAUL V. BOWMAN and ROSELLA M. BOWMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bowman v. Commissioner
Docket No. 1082-77.
United States Tax Court
T.C. Memo 1979-432; 1979 Tax Ct. Memo LEXIS 93; 39 T.C.M. (CCH) 381; T.C.M. (RIA) 79432; October 23, 1979, Filed *93 Held: (1) Petitioners are not entitled to a casualty loss deduction as a result of damage to their boat by storm. (2) Employee business expense deduction disallowed. Paul V. Bowman and Rosella M. Bowman, pro se. Larry K. Akins, for *95 the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $2,817.25 in petitioners' 1973 Federal income tax. The issues for decision are: (1) Whether petitioners are entitled to a casualty loss deduction under section 165(a)[1] in 1973; and (2) whether petitioners are entitled to deductions for employee business expenses claimed on their return. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Paul V. (hereinafter petitioner) and Rosella M. Bowman, husband and wife, resided in Excelsior Springs, Missouri, when they filed their 1973 joint Federal income tax return with the Internal Revenue Service Center, Kansas City, Missouri, and when they filed their petition in this case. In 1969, petitioner purchased a 1959 28-foot Chris Craft cruiser. On July 21, 1970, petitioner transferred the boat from Seneca, Illinois, to Table Rock Lake, a recreational lake situated in the extreme south-central part of Missouri. On or about that same date, petitioner applied for casualty insurance on the *96 boat with Roger Slote, d/b/a Sherwood-Slote Insurance Agency in Excelsior Springs, Missouri.
On August 19, 1970, a storm at Table Rock Lake damaged petitioner's boat. Shortly after this storm, petitioner entered into a verbal contract with a Mr. Cook at the Indian Point Marina to substantially repair the boat for $2,000. Although petitioner stored his boat at the Marina for a few years, Mr. Cook never made any repairs. In September 1973, after the boat had been idle for approximately three years, petitioner learned that a Mr. Gene Straw had purchased the Marina. By that time, the condition of petitioner's boat had deteriorated to the point where one of its engines had completely frozen and neither engine would turn over. In addition, Mr. Straw wanted petitioner to begin paying storage charges for the use of the Marina. As a result of this situation, petitioner sold the boat to Mr. Straw in 1973 for $400. Soon after the storm in August 1970, petitioner attempted to collect on his casualty insurance policy with Mr. Slote. By December 17, 1970, however, petitioner was informed by Mr. Slote that he was not covered by any insurance. Petitioner subsequently filed a petition in *97 the Circuit Court of Clay County, Missouri, at Liberty, alleging that Mr. Slote had agreed to insure petitioner's boat as of August 1, 1970. On November 2, 1972, petitioner was awarded a judgment in the amount of $3,575 against Mr. Slote based on this petition. On February 5, 1973, the Circuit Court in Liberty ordered the Commerce Bank in Excelsior Springs, the garnishee of an account of Roger Slote, to pay the court $1,194.27 in partial satisfaction of the judgment. Of this amount, petitioner received $594.27, while his attorney, Ike Skelton, received $600 as litigation expenses. On February 26, 1973, the petitioner, through Ke Skelton, issued another execution requesting the garnishment of Mr. Slote's account at the Commerce Bank. Commerce Bank announced that Mr. Slote's account had been closed prior to the execution had no money was on deposit at the time of the garnishment. On April 2, 1973, petitioner filed interrogatories with the Clay County Court [2] requiring the Commerce Bank to answer the same. *98 On July 18, 1975, the Clay County Circuit Court Clerk notified petitioner that this garnishment action against the Commerce Bank had been dismissed for want of prosecution. To this date, petitioner has been unable to collect the full amount of the judgment rendered against Mr. Slote. Throughout 1973, petitioner was employed as an airline pilot for North Central Airlines, Inc., which is based in Minneapolis, Minnesota. For personal reasons, however, petitioner chose to reside in Excelsior Springs, Missouri. In the normal course of this employment, petitioner flew from Excelsior Springs to Minneapolis to work for extended periods of time. During these extended periods he flew to the various cites served by North Central Airlines. Ultimately, petitioner would return to Minneapolis and then to his Excelsior Springs residence. While in flight status, petitioner's lodging was provided by North Central Airlines. He was also given a per diem allowance for expenses incurred while in such flight status. In 1973, petitioner received a total of $1,244.10 in reimbursement for his expenses from North Central Airlines. During 1973, petitioner maintained a "Flight Crew Log." This *99 log contained month by month handwritten entries for such items as flight dates, destinations, travel times, expenses, etc. All entries in the log were prepared by petitioner. North Central Airlines did not require its pilots to maintain a Flight Crew Log and petitioner never submitted his log to them. From March 12, 1973 to April 13, 1973, petitioner was required by North Central Airlines to stay in Minneapolis and attend ground school training exercises. During that period, petitioner and his wife stayed at the Parkway Motor Hotel. Petitioner paid for the meals and lodging expenses at such hotel. On his joint 1973 income tax return, petitioner claimed a casualty loss deduction of $4,200 determined as follows: Value of boat damaged
$5,200
Less: Appropriate depreciation
($1,100)
$4,100
Plus: Legal expenses incurred
from litigation seeking
insurance recovery $ 600
$4,700
Less: Amount realized through
salvage
( $ 400)
$4,300
Less: 165(c)(3) limitation
( $ 100)
TOTAL LOSS
$4,200 In his notice of deficiency respondent disallowed the deduction in its entirety. Petitioner also claimed employee business expenses of $5,015.23, consisting of *100 deductions for meals ($3,003), uniforms and maintenance ($235.20), flight training ($971.73), automobile expenses ( $360), telephone expenses ( $240), supplies ($115.30), and medical expenses ( $50). Respondent disallowed all but $1,244.10 of such expenses. OPINION We must determine the following issues: (1) Whether petitioner is entitled to a casualty loss deduction under section 165(a) in 1973 for storm damage to a cabin cruiser; and (2) whether petitioner is entitled to employee business expense deductions under section 162(a) in excess of the amount allowed by respondent. Issue 1: Casualty Loss Deduction
The first issue before this Court is whether petitioner is entitled to casualty loss deduction in 1973 as a result of storm damage to his cabin cruiser. Section 165(a) permits a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Under section 165(c)(3), an individual is allowed to deduct losses of nonbusiness property arising from fire, storm or other casualty to the extent that the loss from each casualty exceeds *101 $100. Since there is no dispute that petitioner's boat was damaged by the storm in 1970, the only question is the amount of the deduction, if any, to which petitioner is entitled for 1973. When there is a "casualty" with respect to nonbusiness property, the proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its value immediately thereafter, not to exceed, however, the adjusted basis of the property. Helvering v. Owens,305 U.S. 468, 471 (1939); Pfalzgraf v. Commissioner,67 T.C. 784, 787 (1977).The burden of proving the amount of deductible loss is upon petitioner. Burnet v. Houston,283 U.S. 223 (1931). It is respondent's contention that petitioner has not sustained his burden since he failed to establish: (1) the fair market value of the boat immediately before the storm, (2) the fair market value immediately after the storm, and (3) his adjusted basis in the boat. After a careful review of the record, we must hold for respondent on this issue. *102 At trial, petitioner offered only scant evidence with respect to the fair market value of the boat before and after the casualty. Although petitioner testified that he thought it was worth approximately $5,300 at the time of the storm, there is nothing in the record to support that belief. The record is also silent as to the value immediately following the storm.Petitioner attempted to prove this value by relying solely upon the sale of the boat for $400 in September 1973. We find this proof inadequate. By September 1973, petitioner's boat had already been in storage for approximately three years. In addition, petitioner testified that while the engines would still turn over after the storm damag, they were totally non-operational in 1973. Furthermore, the final purchase price reflected, to some extent, the potential storage charges likely to be imposed by Mr. Straw. Thus, the $400 figure is not a reliable measure of the fair market value of the boat immediately after the storm. Petitioner also argues that the decrease in value of the boat due to the storm damage can be demonstrated by Mr. Cook's verbal contract to repair the boat for $2,000. *103 Although the "cost of repairs" may be acceptable evidence of the loss in value, section 1.165-7(a)(2)(ii), Income Tax Regs., this regulation contemplates actual repairs and not just estimates. Lamphere v. Commissioner,70 T.C. 391, 395 (1978). As Mr. Cook never undertook to repair the boat, petitioner cannot rely on the "cost of repairs" method for determining the amount of loss deductible under section 165. Even if petitioner had established the decline in value of the boat due to the storm, he still would fail on the deductibility issue because he did not prove his basis in the boat. Sec. 165(b); sec. 1011; sec. 1012. It is well settled that where a taxpayer does not prove his basis, the casualty loss cannot be computed. Millsap v. Commissioner,46 T.C. 751, 760 (1966), affd. without discussion of this issue, 387 F. 2d 420 (8th Cir. 1968); Towers v. Commissioner,24 T.C. 199, 239 (1955). Petitioner failed not only to introduce any documentary *104 evidence establishing his basis in the boat but could not even recall what he had paid for it. Although he testified that the assessed value of the boat when purchased was approximately $5,600, there is no evidence in the record of the relationship between assessed valuation of personal property in that locality and its adjusted basis for tax purposes. Cf. Millsap,supra at 760. Under these circumstances, we hold that petitioner has failed to prove he is entitled to deduct any amount for 1973 as a casualty loss. There is, moreover, an alternative ground for denying petitioner's casualty loss deduction in 1973. As a general rule, section 165 only allows a casualty loss deduction for the taxable year in which the loss is sustained. This requires that the loss be evidenced by closed and completed transactions and fixed by identifiable events. Sec. 1.165-1(d)(1), Income Tax Regs.; Hudock v. Commissioner,65 T.C. 351, 359 (1975). However, if in the year a casualty occurs there exists a claim for reimbursement with respect to which there *105 is a reasonable prospect of recovery, no portion of the loss is deductible until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Sec. 1.165-1(d)(2)(i), Income Tax Regs. Whether the prospects of recovery on a claim are reasonable depends upon the facts and circumstances of each case. Gale v. Commissioner,41 T.C. 269, 275 (1963).
In 1973, a $3,575 judgment was rendered against Mr. Slote for failure to insure petitioner's boat. Through garnishment of Mr. Slote's bank account at the Commerce Bank in Excelsior Springs, petitioner was able to recover only $1,194.27, thereby leaving an uncollected balance of $2,380.73.Petitioner made no showing, however, that Mr. Slote was insolvent or otherwise unable to pay the remaining portion of the judgment in 1973. Nor did he introduce evidence that any collection remedies, other than wage garnishment, were unsuccessfully pursued during that year. The burden was on petitioner to show that in 1973 his prospect of recovering the $2,380.73 or any part thereof *106 was no longer reasonable. Hudock v. Commissioner,supra at 361. On the basis of the record, he has not met that burden. Accordingly, respondent's determination must be sustained. Issue 2: Employee Business Expenses
Petitioner claimed employee business expenses of $5,015.23 on his 1973 return. After reducing this total by the $1,244.10 he received from his employer, petitioner deducted the remaining $3,771.13 in 1973. Respondent allowed petitioner to offset the reimbursement with an equal amount of the claimed expenses, but disallowed the balance in its entirety. Since most of the expense deduction in dispute consists of meals, that item will be considered first. Petitioner contends that he is entitled to a business expense deduction of $3,003 for the cost of meals purchased both during flight training exercises and while away from Minneapolis on flight status. Section 162(a)(2) authorizes a deduction for traveling expenses, including amounts expended on meals while away from home in the pursuit of a trade or business."Home" for purposes of section 162(a)(2) *107 means the taxpayer's principal place of business. Kroll v. Commissioner,49 T.C. 557, 561, 562 (1968). During 1973, petitioner's principal place of employment was Minneapolis. The meal expenses incurred by petitioner while attending flight exercises in Minneapolis are not "away from home" travel expenses, but are nondeductible personal expenses under section 262. With respect to the deduction for meal expenses incurred while traveling away from Minneapolis, petitioner must satisfy the strict substantiation requirements of section 274(d). That section provides that no deduction shall be allowed for travel expenses under section 162 unless the taxpayer substantiates the amount, time, place and purpose of the expense with adequate records or sufficient evidence corroborating his own statement. In order to satisfy the adequate records requirement, the taxpayer must maintain an account book, diary, statement of expense or similar record prepared at or near the time of the expenditure. Sec. 1.274-5(c)(2), Income Tax Regs.
Petitioner attempted *108 to comply with section 274(d) by submitting into evidence a Flight Crew Log in which he claimed to have recorded his meal expenditures at or near the time they were made. After a careful examination of this log, however, we conclude that it fails to satisfy the adequate records requirement of section 274(d). For each entry date recorded in 1973, the log listed meal expenses of exactly $20. We find it hard to believe that petitioner's meal expenses remained so perfectly consistent throughout that year. On cross-examination, petitioner finally conceded that the $20 figure represented an estimate of the average amount spent on meals. Moreover, the log showed signs of having been altered and petitioner admitted on cross-examination to having done some erasing. Petitioner further conceded that he could not recall when many entries were in fact made, casting more doubt upon their accuracy. Consequently, petitioner's Flight Crew Log failed to provide adequate substantiation for the claimed meal expenses. Finally, petitioner also failed to produce any evidence corroborating his vague and often contradictory testimony on this issue. Accordingly, the disallowance of petitioner's deduction *109 for meals must be sustained. Petitioner also claimed the following employee business expenses on his 1973 return. 1. Uniforms and maintenance
$235.20
2. Automobile
$360.00
3. Flight training
$971.73
4. Telephone
$240.00
5.Supplies
$155.30
6. Medical
$ 50.00
The burden is upon petitioner to prove that he actually incurred these expenses and that they were ordinary and necessary business expenses. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner failed to carry his burden by presenting sufficient evidence to substantiate any of these items. Therefore, we have no choice but to sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Under the rules of the court, the interrogatories were filed as a new course of action: Viz, Paul V. Bowman v. Commerce Bank of Excelsior Springs, Garnishee of Roger Slote d/b/a Sherwood-Slote Insurance Agency.↩